# EXHIBIT A

Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone 602.229.5200

Jeremy A. Lite (AZ Bar #020554)
jeremy.lite@quarles.com
Ryan S. Patterson (AZ Bar #024753)
ryan.patterson@quarles.com
Kristen Arredondo (AZ Bar #034052)
kristen.arredondo@quarles.com

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 434-5000
Liam J. Montgomery (D.C. Bar #991205)
lmontgomery@wc.com
J. Liat Rome (D.C. Bar #1033276)
jrome@wc.com
(PHV applications forthcoming)

*Attorneys for Defendants Chemguard, Inc. and*
*Tyco Fire Products L.P.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| City of Tucson and Town of Marana, | NO. _____ |
| Plaintiffs, | (Formerly Pima County Superior Court Case No. C20185523) |
| vs. | |
| 3M Company, f/k/a Minnesota Mining and Manufacturing Co.; Buckeye Fire Equipment Company; Chemguard, Inc.; Tyco Fire Products, L.P.; and National Foam Inc., | **VERIFICATION OF COUNSEL UNDER LRCiv 3.6(b)** |
| Defendants. | |

1      In accordance with 28 U.S.C. § 1446(a) and LRCiv 3.6(b), Jeremy A. Lite of the

2   law firm Quarles & Brady LLP, counsel for Defendants Chemguard, Inc. and Tyco Fire

3   Products L.P., hereby verifies that the attached filings comprise true and complete copies

4   of all pleadings and other documents filed to date in the state court proceeding and served

5   on or sent to these Defendants.

6          RESPECTFULLY SUBMITTED this 21st day of December, 2018.

7

8                                   By */s/ Jeremey A. Lite*

9                                   Jeremy A. Lite
                                     Ryan S. Patterson
10                                  Kristen Arredondo
                                     Quarles & Brady, LLP
11                                  Renaissance One
                                     Two North Central Avenue
12                                  Phoenix, AZ  85004-2391

13                                  Liam J. Montgomery
                                     J. Liat Rome
14                                  WILLIAMS & CONNOLLY LLP
                                     725 Twelfth Street, N.W.
15                                  Washington, D.C.  20005

16
                                     *Attorneys for Defendants Chemguard, Inc. and*
17                                  *Tyco Fire Products L.P.*

18

19

20

21

22

23

24

25

26

Your request is being processed........

## Case Information

| | |
|---|---|
| Case Number: | C20185523 |
| Filing Date: | 11/8/2018 |
| Caption: | CITY OF TUCSON VS. 3M COMI |
| Judge: | BRENDEN J G |

## Party Information

| Party Full Name | Party Role | Name Type | DOB |
|---|---|---|---|
| CITY OF TUCSON | Plaintiff | True | |
| TOWN OF MARANA | Plaintiff | True | |
| 3M COMPANY | Defendant | True | |
| MINNESOTA MINING AND MANUFACTURING CO. | Defendant | Formerly Known As (FKA) | |
| BUCKEYE FIRE EQUIPMENT COMPANY | Defendant | True | |
| CHEMGUARD, INC. | Defendant | True | |
| TYCO FIRE PRODUCTS, LP | Defendant | True | |
| NATIONAL FOAM, INC. | Defendant | True | |



**Case/Document Information**

| Document Type | Document SubType | Document Caption | File Date | Image |
|---|---|---|---|---|
| Misc | Documents/Records Filed | Documents/Records Filed | 11/8/2018 | Available at Courthouse |
| Arbitration | Fastar Certificate | Fastar Certificate | 11/8/2018 | Available at Courthouse |
| Summons | Summons/Subpoena | Summons/Subpoena | 11/8/2018 | Available at Courthouse |
| Summons | Summons/Subpoena | Summons/Subpoena | 11/8/2018 | Available at Courthouse |
| Summons | Summons/Subpoena | Summons/Subpoena | 11/8/2018 | Available at Courthouse |
| Summons | Summons/Subpoena | Summons/Subpoena | 11/8/2018 | Available at Courthouse |
| Summons | Summons/Subpoena | Summons/Subpoena | 11/8/2018 | Available at Courthouse |
| Open | Petition & Complaint | Petition & Complaint | 11/8/2018 | Available at Courthouse |
| Receipt | All Money Receipts | All Money Receipts 3030957 | 11/8/2018 | Available at Courthouse |

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT

11/8/2018 11:38:48 AM

BY: ARTHUR ROBLES
DEPUTY

Case No. C20185523
HON. BRENDEN J GRIFFIN

1  Kevin D. Neal (Bar No. 011640)
   Kenneth N. Ralston (Bar No. 034022)
2  GALLAGHER & KENNEDY, P.A.
   2575 East Camelback Road
3  Phoenix, Arizona  85016-9225
   Telephone:    (602) 530-8000
4  Facsimile:    (602) 530-8500
   kevin.neal@gknet.com
5  ken.ralston@gknet.com

6  Paul J. Napoli (*PHV forthcoming*)
   Louise Caro (*PHV forthcoming*)
7  Tate J. Kunkle (*PHV forthcoming*)
   Aaron Modiano (*PHV forthcoming*)
8  NAPOLI SHKOLNIK PLLC
   360 Lexington Avenue, 11th Floor
9  New York, New York 10017
   Telephone:    (212) 397-1000
10
   *Attorneys for Plaintiffs City of Tucson and Town of*
11 *Marana*

12            SUPERIOR COURT OF THE STATE OF ARIZONA
13                        COUNTY OF PIMA
14

15 CITY OF TUCSON and TOWN OF          No.
   MARANA,
16                                     **COMPLAINT**
                Plaintiffs,
17                                     **(Tort/Environmental)**
   v.
18                                     **(Jury Trial Demanded)**
   3M COMPANY, f/k/a Minnesota Mining
19 and Manufacturing Co.; BUCKEYE FIRE
   EQUIPMENT COMPANY;
20 CHEMGUARD, INC.; TYCO FIRE
   PRODUCTS L.P.; and NATIONAL
21 FOAM, INC.,

22              Defendants.

23
         Plaintiffs, City of Tucson (hereinafter the "City") and Town of Marana (hereinafter
24
   the "Town") (collectively "Plaintiffs"), by and through their attorneys Gallagher Kennedy,
25
   P.A. and Napoli Shkolnik PLLC, as and for their Complaint against Defendants 3M
26
   Company, f/k/a Minnesota Mining and Manufacturing Co., Buckeye Fire Equipment

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

Company, Chemguard, Inc., Tyco Fire Products L.P. and National Foam, Inc. (collectively "Defendants") allege as follows:

## INTRODUCTION

1. Plaintiffs are Arizona municipal corporations, and bring this action against Defendants to recover substantial past and future damages for the treatment and removal of the contamination of its public drinking water supply wells and public drinking water supply systems, including but not limited to treating the water to eliminate contamination caused and/or created by Defendants' products, and to protect the public health, safety, welfare, and the environment.

2. From the mid-1960's through today, Defendants, at various times, manufactured, marketed, and sold aqueous film-forming foam ("AFFF"), a firefighting product used to control and extinguish aviation, marine, fuel, and other flammable liquid fires.

3. Defendants' AFFF contained perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and/or contained the precursors of PFOS and PFOA, and/or a wide variety of other closely-related perfluorinated compounds ("PFCs") that behave in similar detrimental ways.

4. PFOA and PFOS are toxic, do not biodegrade, are persistent in the environment, move readily through soil and the groundwater, and pose a significant risk to human health and safety.

5. PFOA and PFOS are toxic and have been linked to causing a variety of illnesses, including but not limited to kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia. The chemicals are particularly dangerous for pregnant women and young children.

2

6.     Defendants were aware in the 1960's and 1970's that PFOA and PFOS were toxic, do not biodegrade, are persistent in the environment, move readily through soil and groundwater and pose a significant risk to the public water supply, human health and safety but elected to use these chemicals and place profits over human health.

7.     Airports, military installations, and municipal fire departments were unaware of the environmental and health risks and hazards of using Defendants' AFFF-containing PFOA and PFOS for decades. These sites have been linked to the widespread contamination of surface and groundwater, as well as public drinking water wells, with PFOA, PFOS, and other PFCs throughout the country.

8.     Defendants elected to include PFOA and/or PFOS and/or other PFCs in their AFFF formulations; there was no requirement to do so.

9.     Defendants' AFFF has been used at the Davis-Monthan Air Force Base ("DMAFB") for more than four decades in routine training and emergency activities, allowing PFOS/PFOA to travel to the surrounding groundwater, causing contamination of various of Plaintiffs' water supply wells, in various locations, in varying amounts, at various times.

10.     In addition to routine training for personnel, additional releases of AFFF have occurred at the DMAFB through testing of the equipment, false alarms, equipment malfunctions, and other incidental releases in the hangers, fire stations and other locations.

11.     The Tucson Airport Authority operates the Tucson International Airport ("TIA") on City-owned land located on the south side of Tucson.  On information and belief, Defendants' AFFF has likewise been used at the TIA for several decades in routine training and emergency activities, allowing PFOS/PFOA to travel to the surrounding groundwater, causing contamination of City water supply wells, in various locations, in varying amounts, at various times.

3

12.     In addition to routine training for personnel, additional releases of AFFF have occurred at the TIA through testing of the equipment, false alarms, equipment malfunctions, and other incidental releases in the hangers, fire stations and other locations.

13.     The City also operates the Tucson Fire Training Academy, which is currently located southeast of Tucson and was previously located near the center of the Tucson Metropolitan Area, where it trained and trains firefighters to use AFFF, causing additional releases of the Defendants' AFFF-containing PFOA and PFOS into the groundwater supply.

14.     Once Defendants' AFFF was released to the environment, whether on the ground, into the air, or through a wastewater treatment system, the PFOS/PFOA contaminated both the City's and Town's water supplies.

15.     There is no natural sink for the Defendants' AFFF-containing PFOS and PFOA. Except for incineration above 10,000 degrees, Defendants' PFOS and PFOA will eventually accumulate in the water and subsequently bio accumulate in all living organisms through ingestion, including in the blood and organs of humans.

16.     Defendants knew or should have known that PFOA and PFOS are highly soluble in water, extremely mobile, persistent and very likely to contaminate drinking water wells and present significant risks to human health and welfare if released into the environment.

17.     Defendants marketed, manufactured, and sold their AFFF with the knowledge that PFOS and PFOA would be released into the environment in firefighting training and rescue exercises, inadvertent releases, false alarms, as well as in emergencies.

18.     Plumes of PFOA and PFOS can persist in underground aquifers for many decades. Once the plume reaches a well, it continues to contaminate the water drawn from that well. The most viable technologies to remove PFOS and PFOA (and other PFCs)

4

1   from the groundwater are granulated activated carbon ("GAC") and reverse osmosis,

2   osmosis, and ion exchange ("IX").

3       19.    The City and Town bring this action to recover damages incurred and to be

4   incurred for the investigation, monitoring, remediation, treatment and other necessary

5   responses to the PFOA/PFOS water contamination, to stem the threat to public health and

6   the environment caused by Defendants' AFFF products, and to ensure that the cost of the

7   water treatment be borne by those responsible, not the Plaintiffs and their rate-payers.

8   **THE PARTIES**

9   **PLAINTIFFS**

10  ***City of Tucson***

11      20.    Plaintiff the City of Tucson is an Arizona municipal corporation and

12  political subdivision of the State of Arizona that owns and operates Tucson Water, a

13  department of the City, the largest provider of drinking water for the Tucson Metropolitan

14  Area.

15      21.    The City serves several hundred thousand residential, commercial and

16  industrial customers both within and outside the city boundaries.

17      22.    The City has the responsibility to deliver safe, clean, and high-quality water

18  that meets state and federal regulations. The City also voluntarily monitors the water

19  system for hundreds of contaminants that are not regulated by federal, state or local

20  government. The City possesses inherent authority to perform acts to preserve or benefit

21  its property and water supply and may maintain actions to recover damages to its

22  property.

23      23.    The City has been operating its water system for more than 100 years and

24  currently serves approximately 725,000 people.

25

26

5

1    24.    The City's water system is composed of over 200 active and standby wells,

2  4,611 miles of delivery pipelines, 125 boosters to move water around the delivery area

3  and 57 storage facilities capable of storing more than 300 million gallons of water.

4    25.    Defendants' AFFF products containing PFOA and PFOS and/or their

5  precursors, contaminated the groundwater supply from which the City draws water for its

6  customers.

7    26.    On May 2, 2012, the United States Environmental Protection Agency's

8  ("USEPA") published its Third Unregulated Contaminant Monitoring Rule ("UCMR3")

9  which required public water systems nationwide to monitor for thirty (30) contaminants of

10  concern between 2013 and 2015.

11    27.    The UCMR3 Rule included the requirement that public water systems

12  sample for PFCs, including PFOA and PFOS.

13    28.    The City first reported the presence of PFOS in its 2013 Annual Water

14  Quality Report. At that time the average of PFOS found in the City's water was 28 parts

15  per trillion ("ppt"). The same amount was reported in the 2014 and 2015 Annual Water

16  Quality Report.

17    29.    Prior to May 19, 2016, the USEPA's health advisory level for PFOS was

18  200 ppt and 400 ppt for PFOA.

19    30.    In May 2016, the USEPA lowered the health advisory level to 70 ppt for

20  PFOA and PFOS combined.

21    31.    On November 15, 2016, the USEPA published a memorandum that clarified

22  the May 2016 Health advisory stating that this advisory was applicable to drinking water.

23    32.    Consequently the City took actions by closing certain wells due to the

24  presence of PFOA and PFOS contamination to safeguard its customers.

25    33.    Shortly after the USEPA memorandum, the City tested Well C-014B on or

26  about November 30, 2016.

34.     On or about January 4, 2017, the City received the results from the November 30, 2016 sampling at Well C-014B, which showed a PFOS/PFOA combined level of 79 ppt.

35.     On or about January 4, 2017, Well C-014B was taken off-line due to the PFOS/PFOA contamination and has remained off-line since that date.

36.     Subsequent sampling at Well C-014B showed combined levels of 133 ppt on October 12, 2017 and 97 ppt on March 20, 2018.

37.     Due to the contamination of Well C-014B and wanting to continue to protect the health of its customers, the City thereafter increased the monitoring of the other wells located in the Davis Monthan AFB Area.

38.     On June 26, 2017, Well C-007A was taken off-line due to the PFOS/PFOA contamination and has remained off-line since that date.

39.     Subsequent testing at Well C-007A revealed combined PFOS/PFOA levels of 3,220 ppt on 10/12/2017 and at 2,950 ppt on 3/20/2018.

40.     Well C-036B was removed from service in June 2018 when the PFOS and PFOA levels of 39.8 ppt were discovered, even though the levels had not exceeded 70 ppt.

41.     PFOA and PFOS contamination was also discovered in the City's Northwest Well Field.

42.     The City's Northwest Well Field also includes assets within the Town of Marana.

43.     Pursuant to a consent decree in the United States District Court (Arizona), the City operates the Tucson Airport Remediation Project ("TARP") to remediate the Tucson International Airport Superfund Site for contamination caused by aircraft manufacturing activities.

44.     Under the TARP Consent Decree, the City has an obligation to accept water from the TARP remedy for use as drinking water as long as it meets the treatment

7

1   standards established for the remedy, and does not violate a Maximum Contaminant Level

2   ("MCL") for any other contaminant not listed in the TARP treatment plan.

3       45.    The TARP remedy includes a well field, pipelines, and a treatment plant that

4   uses packed column aeration of granulated activated carbon, and advanced oxidation

5   treatment process ("AOP"), and attached carbon vessels for quenching peroxide from the

6   AOP process.

7       46.    Recent testing of the TARP wells and treatment process show that certain

8   individual wells that are part of the TARP remedy have levels of PFOA and PFOS that

9   exceed the May 2016 health advisory levels, and that the completed post-treatment water

10   from the TARP remedy contained levels of PFOA and PFOS that were about 50% of the

11   70 ppt health advisory.

12       47.    The City is currently operating the TARP remedy after deactivating those

13   wells with PFOA and PFOS that exceed the 70 ppt health advisory, and blending treated

14   water from the TARP remedy with water supplies that have non-detectable levels of PFCs

15   to further reduce the levels of PFOA and PFOS in the City's drinking water supplies prior

16   to delivery of those water supplies to any customer.

17       48.    Consequently, the City has incurred and will incur substantial expenses in

18   treating the contaminated water and installing the infrastructure modifications necessary

19   to ensure each residential and commercial property is served clean and safe water.

20       49.    The City will also incur future sampling costs for PFOS and PFOA and

21   other PFCs for the next one hundred (100) years.

22       50.    Based on testing results, the identified plumes of PFOS and PFOA are

23   continuing to migrate, and the City is expecting to discover as-yet undiscovered areas of

24   additional contamination, causing the City to incur future costs for sampling and treatment

25   for these contaminants.

26

8

1      51.    Testing results have also identified PFOS and PFOA in the community's

2  wastewater, a substantial portion of which is recycled into the City's reclaimed water

3  system.  The reclaimed system is used for irrigation throughout the Tucson region,

4  including sites located within the Town of Marana. Testing has confirmed the presence of

5  PFOS, PFOA, and other PFCs in this reclaimed water. The City is incurring costs for

6  sampling the reclaimed system and will incur substantial future costs for sampling and

7  treatment of the water used in the reclaimed system.

8  ***Town of Marana***

9      52.    Plaintiff Town of Marana (the "Town") an Arizona municipal corporation

10  and political subdivision of the State of Arizona that owns and operates the Marana Water

11  Department.

12      53.    The Marana Water Department is a department of the Town of Marana, and

13  operates as a public water and wastewater utility, serving residential, commercial and

14  industrial customers both within and outside the Town boundaries.

15      54.    The Town of Marana has the responsibility to deliver safe, clean, and high-

16  quality water that meets state and federal regulations.

17      55.    The Town possesses the inherent authority to perform acts to preserve or

18  benefit its property and water supply and may maintain actions to recover damages to its

19  property.

20      56.    The Town can also voluntarily monitor the water system for compounds that

21  are not regulated by federal, state or local government.

22      57.    The Town's water department has been operating for more than 27 years

23  and serves approximately 20,000 people through over 7,700 service connections.

24      58.    The Town's water distribution system is comprised of seven (7) independent

25  water systems utilizing nineteen (19) production supply wells that cover both the north

26  and south areas of Marana.

59.     The water system is managed and maintained by the Town's staff.

60.     Defendants' AFFF products containing PFOA and PFOS and/or their precursors contaminated the groundwater supply from which the Town draws water for its customers.

61.     In mid-December 2016, the Town's supply wells were tested for PFCs, including but not limited to PFOS and PFOA.

62.     In January 2017, the Town received the results of the PFC sampling and discovered that six (6) supply wells in two systems had PFOA/PFOS levels over the 70 ppt USEPA health advisory level.

63.     Additional potable wells in two other water systems had detections of PFCs, but are currently below the USEPA health advisory of 70 ppt.

64.     The results from the December 2016 PFOA/ PFOS testing showed that the wells with PFOA/PFOS levels that were higher than the USEPA health advisory comprised 100% of the Picture Rocks 10-192 ("PR") and Airline-Lambert 10-138 ("AL") Water Systems.

65.     The PR Water System has two (2) wells: Continental Reserve #1 with PFOA/PFOS results of 80ppt, and Continental Reserve #2 with PFOA/PFOS results of 92ppt.

66.     The AL Water System is composed of four (4) wells. The Saguaro Bloom Well has detections of PFOA/PFOS of 109 ppt; the Airline Well has detections of PFOA/PFOS at 102 ppt; the Lambert Well has detections of PFOA/PFOS at 84 ppt; and the La Puerta Wells have detections of PFOA/PFOS at 90 ppt.

67.     The Falstaff well is not a community water system, but supplies water to one service connection. This well had detections of PFOA/PFOS of 87 ppt in December 2016.

10

68. In mid-December 2017 the groundwater production wells were again tested for PFCs. Results of those tests were received in late January 2018.

69. The results from the December 2017 PFOA/PFOS testing showed that the wells with PFOA/PFOS levels higher than the USEPA health advisory composed of 50% of the PR Water System and 100% of the AL Water Systems.

70. In December 2017 the PR Water system had two wells—Continental Reserve#1 with PFOA/PFOS results of 68ppt and Continental Reserve 2 with PFOA/PFOS results of 79ppt.

71. In December 2017 the AL Water system was composed of four wells— Saguaro Bloom with PFOA/PFOS results of 73 ppt, Airline with PFOA/PFOS of 101 ppt, Lambert with PFOA/PFOS of 76 ppt, and La Puerta with PFOA/PFOS of 92 ppt.

72. The Falstaff well had detections of PFOA/PFOS of 80 ppt in December 2017.

73. The Town currently has no treatment at any of the supply wells to treat the PFOS and PFOA contamination caused by Defendants and their AFFF-containing PFOA/PFOS.

74. Consequently, the Town has incurred and will incur substantial expenses in testing and treating the contaminated water, along with significant infrastructure modifications to ensure each residential and commercial property is served clean and safe water. There are PFOA/PFOS detections within the Town's other water systems that will continue to be actively monitored and will require treatment.

75. The Town will also incur future sampling costs for PFOS and PFOA.

76. Arizona law requires new development in the Tucson region to prove access to 100-year supply of water from renewable resources instead of groundwater.

77. The Town's water system is certified by the State of Arizona as having a 100-year supply of water for a certain number of new equivalent demand units ("EDUs"),

1    based on the Town's allocation of Central Arizona Project ("CAP") water, the Town's

2    ownership of effluent produced by the Town's wastewater reclamation facility and

3    another metropolitan area facility, and other accrued water resource credits.

4        78.    Due to the scarcity of renewable water resources, including CAP water, the

5    Town needs to recharge as much effluent as possible from its current and future

6    wastewater reclamation facilities.

7        79.    The Town recovers recharged effluent using recovery wells that draw

8    potable water from the effluent-recharged aquifer.

9        80.    To avoid polluting the aquifer to the future detriment of the Town and all

10    others who draw water from it, PFOS, PFOA, and other PFCs must be removed from the

11    Town's effluent stream, at substantial cost, before recharge.

12        81.    Any other beneficial use of effluent will also require treatment for the

13    removal of PFCs (i.e. direct potable reuse, irrigations, etc.).

14                           **DEFENDANTS**

15        82.    Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing

16    Company) ("3M") is a corporation organized under the laws of the State Delaware, having

17    its principal place of business at 3M Center, St. Paul, Minnesota 55133.

18        83.    Beginning before 1970 and until at least 2002, 3M manufactured, distributed

19    and sold AFFF-containing PFCs that included but was not limited to PFOS.

20        84.    3M was the only company that manufactured or sold AFFF-containing

21    PFOS.

22        85.    3M manufactured and/or distributed and/or sold AFFF foam containing

23    PFCs that included but was not limited to PFOS, which was used at DMAFB, TIA and/or

24    the Tucson Fire Training Academy.

25        86.    Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership

26    organized and existing under the laws of the State of Delaware, with its principal place of

1  business at One 1400 Pennbrook Parkway, Landsdale, Pennsylvania 19446. Tyco is an

2  indirect subsidiary ultimately wholly owned by Johnson Controls International plc, an

3  Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

4      87.    Tyco is the successor in interest of The Ansul Company ("Ansul"), having

5  acquired Ansul in 1990 (Ansul and Tyco (as the successor in interest to Ansul), will

6  hereinafter be collectively referred to as "Tyco/Ansul.")

7      88.    Beginning in or around 1975, Ansul manufactured and/or distributed and

8  sold AFFF that contained PFCs that included but was not limited to PFOA. After Tyco

9  acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute and sell AFFF

10  that contained PFCs that included but was not limited to PFOA.

11      89.    Tyco/Ansul manufactured and/or distributed and/or sold AFFF foam

12  containing PFOA which was used at the DMAFB, TIA and/or the Tucson Fire Training

13  Academy.

14      90.    Defendant Chemguard, Inc. ("Chemguard") is a Texas corporation with its

15  principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

16      91.    Beginning in or around 1994, Chemguard began manufacturing AFFF that

17  contained PFCs that included but was not limited to PFOA.

18      92.    Chemguard manufactured and/or distributed and/or sold AFFF foam

19  containing PFC's that included but was not limited to PFOA, which was used at the

20  DMAFB, TIA and/or the Tucson Fire Training Academy.

21      93.    Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign

22  corporation organized and existing under the laws of the state of Ohio, with its principal

23  place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.

24      94.    Buckeye manufactured, distributed and/or sold AFFF-containing PFCs that

25  included but was not limited to PFOA, which was used at the DMAFB, TIA and/or the

26  Tucson Fire Training Academy.

95.     Defendant National Foam, Inc. (a/k/a Chubb National Foam) (collectively "National Foam") is a Delaware corporation, having a principal place of business at 144 Junny Road, Angier, North Carolina 27501.

96.     At all times relevant, National Foam designed, manufactured, and sold AFFF-containing PFCs, that included but was not limited to PFOA, which was used at the DMAFB, TIA and/or the Tucson Fire Training Academy.

## JURISDICTION AND VENUE

97.     The acts and events hereinafter alleged occurred in Pima County.

98.     This Court is the proper venue for this case pursuant to A.R.S § 12-401.

99.     This Court has personal jurisdiction over Defendants as they do business in Arizona such that it is reasonably foreseeable that they would be subject to the jurisdiction of the Courts of this State.

100.     Plaintiffs bring causes of action based solely on and arising under Arizona Law. The claims of Plaintiffs are for violations of Arizona law that occurred exclusively in the State of Arizona.

101.     Plaintiffs have incurred substantial damages in an amount exceeding the minimum jurisdictional limit of this Court.

## FACTUAL ALLEGATIONS

**A. PFOA, PFOS and the Threats They Pose to Public Health and the Environment**

102.     Poly- and perfluoroalkyl substances are terms used to describe a group of organic fluorinated alkanes. These compounds have been used for decades to produce household and commercial products that are heat resistant, stain resistant, long lasting, and water and oil repellant. The substances are not naturally occurring and must be manufactured.

103.     The two most widely studied types of these substances are PFOA and PFOS which each contain eight carbon atoms.

14

104.   PFOS and PFOA have unique characteristics that cause them to be: (i) mobile and persistent, meaning they do not stick to soil and are readily transported through the soil and into groundwater where they can migrate long distances; (ii) bio accumulative and biomagnifying, meaning they tend to accumulate in organisms and up the food chain; and (iii) Toxic, meaning they pose serious health risks to humans and animals. Because of these properties, PFOA and PFOS pose significant threats to public health and the environment.

105.   PFOA and PFOS easily dissolve in water, and thus they are mobile and readily spread in the environment. PFOA and PFOS also readily contaminate soils and leach from the soil into the groundwater, where they can travel significant distances.

106.   PFOA and PFOS are characterized by the presence of multiple carbon-fluorine bonds, which are exceptionally strong and stable. As a result, PFOA and PFOS are thermally, chemically and biologically stable and they resist degradation due to light, water, and biological process.

107.   Bioaccumulation occurs when an organism absorbs a substance at a faster rate at which the substance is lost by metabolism and excretion. Biomagnification occurs when the concentration of a substance in the tissues of organisms increases as the substance travels up the food chain.

108.   PFOA and PFOS bio accumulate/biomagnify in numerous ways. First, they are relatively stable and once ingested, they bio accumulate in individual organisms for significant periods of time. Because of this stability, any newly ingested PFOA and PFOS will be added to any PFOA and PFOS already present. In humans, PFOA and PFOS remain in the body for years.

109.   Also, in humans and other mammals, PFOA and PFOS can bio accumulate by crossing the placenta from mother to fetus and by passing to infants through breast milk.

15

1    110.   Finally, PFOA and PFOS biomagnify up the food chain, such as when

2    humans eat fish that have ingested PFOA or PFOS.

3    111.   Studies have shown that exposure to fluorochemicals that contain eight

4    carbons or more ("C8"), such as PFOS and PFOA, may cause testicular cancer, kidney

5    cancer, and liver damage in adults, as well as developmental effects to fetuses during

6    pregnancy or to breast-fed infants, including low birth weight, accelerated puberty, and

7    skeletal variations.

8    112.   There have also been studies linking C8s with autoimmune and endocrine

9    disorders, elevated cholesterol, increased liver enzymes, decreased vaccination response,

10   thyroid disease, and pregnancy-induced hypertension and preeclampsia (a serious

11   pregnancy complication). These injuries may arise within months or years after exposure

12   to PFOS or PFOA.

13   **B. Defendants' Development of AFFF Products Containing PFOA/S**

14   113.   In the 1940s, 3M began using a process called electrochemical fluorination

15   to create carbon-fluorine bonds, which are key components of PFOA and PFOS. 3M soon

16   discovered that these types of substances have strong surfactant properties, meaning that

17   they reduce the surface tension between a liquid and another liquid or solid. This reduced

18   surface tension enabled 3M to develop a myriad of products that resist heat, stains, oil,

19   and water. These products included older forms of Scotchguard, which contained PFOS

20   and when applied to fabric, furniture, and carpets, protected against liquids and stains.

21   114.   In the 1960's, 3M began developing firefighting foams containing PFOS to

22   suppress flammable liquid fires, which cannot be effectively extinguished with water

23   alone.

24   115.   AFFF does not confront the same problems that water alone does in

25   extinguishing flammable liquid fires. AFFF concentrate containing PFOA or PFOS forms

26   foam when it is mixed with water and ejected from a nozzle. That foam is then sprayed so

that it coats the fire, blocking the supply of oxygen feeding the fire and creating a cooling effect and evaporation barrier to extinguish the vapors on fire. A film also forms to smother the fire after the foam has dissipated.

**C.   Defendants' Knowledge of the Threats to Public Health and the Environment Posed by PFOA and PFOS**

116.   Upon information and belief, by the 1970s 3M knew or should have known that PFOA and PFOS are mobile and persistent, bioaccumulative, biomagnifying and toxic.

117.   Upon information and belief, 3M concealed from the public and government agencies its knowledge of the risk of harm posed by PFOA/S.

118.   In 1975, 3M concluded that PFOS was present in the blood of the general population. Since PFOA/S in not naturally occurring, this finding should have alerted 3M to the possibility that their products were a source of this PFOS. The finding also should have alerted 3M to the possibility that PFOS might be mobile, persisted, bioaccumulative, and biomagnifying, as those characteristics could explain the absorption of PFOS in the blood from 3M's products.

119.   In 1976, 3M found PFOA in the blood of its workers. This should have alerted 3M to the same issue regarding PFOS the prior year.

120.   A 1978 study by 3M showed that PFOA reduced the survival rate of fathead minnow fish eggs. Other studies that year showed that PFOS and PFOAS were toxic to rats, and that PFOS is toxic to monkeys. In one study in 1978, all monkeys died within the first few days of being given food contaminated with PFOS.

121.   Studies by 3M after the 1970s also showed adverse effects from exposure to PFOA and PFOS.

122.   In a 1983 study, 3M found that PFOS caused the growth of cancerous tumors in rats.

123.   A study proposal by 3M in 1983 stated that the resistance to degradation of PFOA and PFOS made them "potential candidates for environmental regulations, including further testing requirements under laws such as the Toxic Substances Control Act." 3M Environmental Laboratory (EE &PC), Fate of Fluorochemicals- Phase II at p.6 (E.A. Reiner, ed. May 20, 1983)

124.   A 1997 material safety data sheet ("MSDS") for a non-AFFF product made by 3M listed its ingredients as Water, PFOA and other per-fluoroalkyl substances and warned that the product includes "a chemical which can cause cancer." The MSDS cited "1983 and 1993 studies conducted by 3M and DuPont" as support for this statement. 3M's MSDSs for AFFF did not provide similar warnings.

125.   Federal law requires chemical manufacturers and distributors to immediately notify the United States Environmental Protection Agency ("EPA") if they have information that "reasonably supports the conclusion that such substances or mixture presents a substantial risk of injury to health or the environment." See Toxic Substance Control Act ("TSCA") §8 (e), 15 U.S.C. §2607 (e).

126.   3M did not comply with its duties under TSCA, and in April 2006 it agreed to pay EPA a penalty of more than $1.5 million for its failure to disclose studies regarding PFOA/S and other per-fluoroalkyl substances dating back decades, among other things.

127.   On information and belief, Defendants knew or should have known that in its intended and/or common use, AFFF-containing PFCs, including but not limited to PFOA and PFOS would very likely injure and/or threaten public health and the environment. On information and belief, this knowledge was accessible to all Defendants. For example, in 1970 a well-established firefighting trade association was alerted to the toxic effects on fish of a chemical compound related to PFOS. On information and belief at least, the following Defendants are and/or were members of this trade association: 3M, Tyco/Ansul, Chemguard, and National Foam.

18

1      128.   Additionally, on information and belief, all Defendants knew, or should

2  have known that their AFFF products and the PFOA/S the products contained easily

3  dissolve in water, because the products were designed to be mixed with water; are mobile,

4  because the products were designed to quickly form a thin film; resist degradation,

5  because that is the nature of the products' chemical composition and on information and

6  belief the products had long shelf life and tend to bio accumulate, because studies

7  regarding the presence of substances with carbon-fluorine bonds in the blood of the

8  general population were available since at least 1976.

9  **D. Evolving Understanding of the Levels of Acceptably Safe Exposure to PFOA/S**

10      129.   As previously stated, neither 3M nor, on information and belief, the other

11  Defendants, complied with their obligations to notify EPA about the "substantial risk of

12  injury to health or the environment" posed by their AFFF products containing PFOA and

13  PFOS See TSCA § 8(e).

14      130.   In or around 1998, EPA began investigating the safety of PFOA and PFOS

15  after some limited disclosure by 3M and others.

16      131.   In 2009 the EPA issued a health advisory regarding the level of exposure to

17  PFOA and PFOS in drinking water that it believed was protective of public health. As

18  described on the EPA's website, "health advisories are non-enforceable and non-

19  regulatory and provide technical information to states [,] agencies and other health

20  officials on health effects, analytical methodologies and treatment technologies associated

21  with drinking water contamination." Drinking Water Health Advisories for PFOA and

22  PFOS, What's a Health Advisory?, EPA, https://www.epa.gov/ground-water-and-

23  drinking-water/drinking-water-health-advisories-pfoa-and-pfos (last visited Oct. 1, 2018).

24      132.   As the EPA learned more about PFOA and PFOS, their recommendations in

25  the Health Advisory evolved.

26

133.    On January 8, 2009 EPA issued a Provisional Health Advisory for PFOA and PFOS, advising that "action should be taken to reduce exposure" to drinking water containing levels of PFOA and PFOS exceeding 400 parts per trillion ("ppt") and 200 ppt, respectively. See EPA, PROVISIONAL HEALTH ADVISORIES FOR PERFLUOROOCTANOIC ACID (PFOA) AND PERFLUOROOCTANE SULFONATE ( PFOS) (Jan. 9, 2009), https://www.epa.gov/sites/production/files/2015-09/documents/pfoa-pfos-provisional.pdf.

134.    On or around May 19, 2016, the EPA issued updated Drinking Water Health Advisories for PFOA and PFOS, recommending that drinking water concentrations for PFOA and PFOS, either singly or combined, should not exceed 70 ppt. See Lifetime Health Advisories and Health Effects Support Documents for PFOA and PFOS, 81 Fed. Reg. 33,250-51 (May 25, 2016).

135.    The EPA issued a subsequent clarification of this update on November 16, 2016.

**E. The Use of Defendants' AFFF Products Containing PFCs in Tucson**

136.    Defendants' AFFF products containing PFCs, including but not limited to PFOA and PFOS have been used for decades in Tucson, Arizona at civilian airports and other facilities, including the DMAFB, TIA and the Tucson Fire Training Academy.

137.    On information and belief, Defendants manufactured and sold AFFF products containing PFOA and PFOS that were used and discharged at the DMAFB, TIA and/or the Tucson Fire Training Academy.

138.    Pursuant to Federal Aviation Administration ("FAA") regulations, airport staff were required to perform an AFFF foam test twice a year on each piece of foam dispersing firefighting equipment. During these tests, typically one or two buckets of foam (about 5-10 gallons) were discharged from each piece of equipment to get a reading of the percentage of the mix coming out of each nozzle

20

139. Additionally, firefighting personnel frequently trained using Defendants' AFFF at designated fire training areas at the DMAFB, TIA and/or the Tucson Fire Training Academy.

140. Due to the Defendants' failure to warn and advise the user that the AFFF should not be permitted to enter the soil, water, or groundwater, the AFFF was left to enter into the soil or simply washed off the tarmac which eventually, and foreseeably, contaminated the groundwater.

141. Defendants failed to warn the end user and sensitive receptors such as Plaintiffs, that AFFF permeates through the soil to the groundwater.

142. Defendants further failed to warn the end user that the AFFF soaks into the concrete or asphalt tarmac and slowly releases PFCs, including PFOA and PFOS, into the subsurface and groundwater over decades.

143. Sampling results of surface water, groundwater, and soil, at or near the DMAFB, TIA and/or Tucson Fire Training Academy demonstrate the presence of elevated concentrations of PFCs, specifically PFOA and PFOS, which were components in Defendants' AFFF products.

144. On information and belief, Defendants failed to provide adequate warnings regarding the public health and environmental hazards associated with their AFFF products containing PFOA and PFOS. Defendants also failed to provide adequate instructions about how to avoid or mitigate such hazards.

145. Defendants' AFFF products were used in the normal, intended, and foreseeable manner that resulted in the discharge of PFCs, including PFOA and PFOS, into the environment and drinking water supplies of the City and Town.

**F. AFFF-containing PFOA and PFOS Is Fungible and Commingled in the Groundwater**

146.   AFFF-containing PFCs, including PFOA and/or PFOS, once it has been released to the environment and groundwater, lacks characteristics that would enable identification of the company that manufactured that particular AFFF.

147.   The process of manufacture and distribution of AFFF, including that which contains PFOA and/or PFOS, sometimes includes complex arrangements whereby Defendants sell product for delivery through specific military bases and/or third-party logistic intermediaries throughout the country.

148.   A subsurface plume, even if it comes from a single location, such as a fire training area, most likely originates from mixed batches of AFFF coming from different manufacturers.

149.   There were most likely several areas located around the DMAFB where firefighting exercises were historically conducted and where AFFF was used and entered the groundwater and it is not possible to determine the identity of the manufacturer whose AFFF-containing PFOA and PFOS contributed to the groundwater contamination plume impacting Plaintiffs' water supplies.

150.   Because precise identification of the specific manufacturer of any given AFFF that was the source of PFOA and PFOS found in Plaintiffs' Supply Wells is impossible, Plaintiffs must pursue all Defendants, jointly and severally, for those indivisible injuries which Defendants have collectively visited upon Plaintiffs.

151.   Defendants are also jointly and severally liable because they conspired to conceal the true toxic nature of PFCs, including PFOS and PFOA, to profit from the use of AFFF-containing PFOA and PFOS, at Plaintiffs' expense, to foreseeably contaminate Plaintiffs' water supplies, and to attempt to avoid liability for such contamination of the groundwater.

22

## COUNT I

## STRICT LIABILITY – DESIGN DEFECT AND/OR DEFECTIVE PRODUCT
## PURSUANT TO A.R.S § 12-681

152.   Plaintiffs incorporate by reference each of the preceding paragraphs and incorporate each such paragraph as if fully stated herein.

153.   Defendants' AFFF was defective and unreasonably dangerous as per A.R.S. §12-681.

154.   As commercial designers, manufacturers, distributors, suppliers, sellers, and/or marketers of AFFF-containing PFCs, including PFOA and PFOS, Defendants had a strict duty not to place into the stream of commerce a product that is unreasonably dangerous.

155.   Defendants knew that third parties would purchase AFFF-containing PFOA and PFOS and use it without inspection for defects.

156.   At the time of manufacture, Defendants knew that the chosen formulation of AFFF which included PFOA/PFOS was not biodegradable, bio accumulated in fish, wildlife, and humans, and was toxic.

157.   Defendants were also aware and/or in the possession, of an available safer design that was functional and reasonably priced.

158.   In their marketing, distribution and selling, Defendants provided no warnings or inadequate warnings to consumers, end users, or sensitive receptions, like Plaintiffs, about the dangerous propensities of the AFFF-containing PFOA/PFOS.

159.   AFFF-containing PFOA/PFOS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties were applied, discharged, disposed of, or otherwise released onto lands and/or water near Plaintiffs' water production wells. Such discharges occurred at various locations, at various times, and in various amounts.

160.   The AFFF-containing PFOA/PFOS purchased by third parties was used in a reasonably foreseeable manner and without substantial change in the condition of such products.

161.   Defendants knew or reasonably should have known that the use of AFFF-containing PFOA and PFOS in its intended manner would foreseeably result in the spillage, discharge, disposal, or release of AFFF onto land and eventually into groundwater.

162.   The AFFF-containing PFOA and PFOS used near Plaintiffs' water production wells was defective in design and unreasonably dangerous because, among other things:

   a.   PFOA and PFOS causes extensive and persistent groundwater contamination when it, or products containing it, are used in their foreseeable and intended manner.

   b.   PFOA and PFOS contamination in drinking water poses significant threats to public health and welfare.

   c.   Defendants failed to conduct and/or failed to disclose reasonable, appropriate, or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFOA and PFOS.

163.   At all times relevant to this action, AFFF-containing PFOA and PFOS was unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the foreseeable risk of harm to public health and welfare posed by PFOA and PFOS outweighed the cost to Defendants of reducing or eliminating such risk.

164.   Defendants should have taken reasonable remedial measures in order to produce AFFF without the use of PFOA and PFOS, the omission of such modifications rendered AFFF unreasonably dangerous.

24

165.    As a direct and proximate result of the defects previously described, the City's Central Wellfield, the Northwest Well Field, the TARP system, the Town's AL and PR Water Systems, and the Plaintiffs' wastewater and reclaimed water systems (hereinafter collectively referred to as the "Impacted Systems") have been, and continue to be, contaminated with PFOA and/or PFOS in varying amounts over time, causing Plaintiffs significant damages.

166.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur substantial damages related to PFOA and/or PFOS contamination of their Impacted Systems, including but not limited to capital costs expended on treatment systems, piping and other modifications to the supply systems, past and future operation and maintenance of the treatment systems, engineering costs, legal costs, and sampling costs.

167.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of groundwater. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard of the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

168.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below.

## COUNT II

**STRICT LIABILITY- FAILURE TO WARN PURSUANT TO A.R.S § 12-681**

169.   Plaintiffs incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

170.   As commercial distributors, sellers, manufacturers, suppliers, marketers, and/or designers of AFFF, Defendants had a strict duty to warn against dangers or hazard in the use or misuse of the product.

171.   At the time of marketing, when the AFFF left control of the Defendants, Defendants knew, or in the exercise of reasonable care, should have known that the AFFF-containing PFOA and/or PFOS was not biodegradable, was toxic, and that it bio accumulated in fish, wildlife and humans, and knew they were providing inadequate warning or instruction about the inherent danger of allowing the AFFF to be dispersed onto the ground where by runoff or permeation through the ground it would foreseeably infiltrate groundwater.

172.   Defendants knew or should have known that third parties would purchase AFFF-containing PFOA and PFOS and use it at the DMAFB, TIA and/or the Tucson Fire Training Academy where runoff would permeate into drinking water production wells and the Santa Cruz River and end up in the City and Town's drinking water supply.

173.   AFFF-containing PFOA and/or PFOS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties was applied, discharged, disposed of, or otherwise released at various locations, at various times, and in various amounts onto the lands and/or water in the vicinity of Plaintiffs' drinking water production wells.

174.   AFFF-containing PFOA and PFOS purchased by third parties was used in a reasonably foreseeable manner and without substantial change in the condition of such products.

175.   Defendants knew or should have known that the use of AFFF-containing PFOA/PFOS in its intended manner would result in the discharge, disposal, or release of PFOA/PFOS onto land and into groundwater.

176.   The AFFF-containing PFOA and PFOS used in the vicinity of Plaintiffs' drinking water wells was defective in design and unreasonably dangerous products for the reasons set forth above.

177.   Despite the known and/or reasonably foreseeable hazards to human health and welfare associated with the use of AFFF-containing PFOA and PFOS in the vicinity of Plaintiffs' water production wells, including contamination of public drinking water wells with PFOA and/or PFOS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

178.   In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their AFFF products containing PFOA and/or PFOS or otherwise.

179.   As a direct and proximate result of Defendants' failure to warn of the hazards posed by disposal or release of AFFF-containing PFOA and PFOS in the vicinity of subterranean public drinking water wells that were, or reasonably should have been, known to them, PFOA and/or PFOS contaminated Plaintiffs' Impact Systems.

180.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur substantial damages related to PFOA and/or PFOS contamination of their Impacted Systems, including but not limited to capital costs expended on treatment systems, piping and other modifications to the supply systems, past and future operation and maintenance of the treatment systems, engineering costs, legal costs, and sampling costs.

181.   Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS

1   contamination of water supply wells. Defendants committed each of the above-described

2   acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such

3   conduct was performed to promote sales of AFFF, in conscious disregard to the probable

4   dangerous consequences of that conduct and its reasonably foreseeable impacts on public

5   health and welfare. Therefore, Plaintiffs request an award of punitive damages in an

6   amount sufficient to punish these Defendants and that fairly reflects the aggravating

7   circumstances alleged herein.

8        182.   Defendants are strictly, jointly and severally liable for all such damages, and

9   Plaintiffs are entitled to recover all such damages and other relief as set forth below.

10   **COUNT III**

11   **NEGLIGENCE**

12        183.   Plaintiffs incorporate by reference each and every allegation set forth in all

13   preceding paragraphs as if fully restated herein.

14        184.   As commercial distributers, sellers, manufacturers, suppliers, marketers,

15   and/or designers, Defendants owed a duty of care to Plaintiffs not to place into the stream

16   of commerce a product, AFFF, that was in a defective condition and unreasonably

17   dangerous to groundwater.

18        185.   Defendants breached this duty by negligently designing, formulating,

19   manufacturing, distributing, selling, supplying, and/or marketing such unreasonably

20   dangerous products into the stream of commerce, including for the use at DMAFB, TIA,

21   and Tucson Fire Training Academy, even when they knew or should have known of the

22   dangers PFOA and PFOS posed to public drinking water wells, which foreseeably

23   contaminated the Impacted Systems.

24        186.   Among other things, Defendants breached this duty when they

25   manufactured, marketed, distributed, supplied, and sold AFFF even though they knew or

26   should have known of the dangers that PFOA and PFOS foreseeably posed to

28

1   groundwater. Defendants should have known that the manner in which they were
2   manufacturing, marketing, and selling AFFF-containing compounds like PFOS and
3   PFOA, would inevitably result in the contamination of the public supply water wells,
4   including the Impacted Systems.

5       187.   Defendants knew or should have known that exposure to PFOA and PFOS
6   was hazardous to the environment and to human health.

7       188.   As a direct and proximate result of Defendants' acts and omissions as
8   alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur damages
9   related to PFOA and PFOS contamination of the Impacted Systems, including but not
10  limited to capital costs expended on treatment systems, piping and other modifications to
11  the supply systems, past and future operation and maintenance of the treatment systems,
12  engineering costs, legal costs, and sampling costs.

13      189.   Defendants knew it was substantially certain that their acts and omissions
14  described above would cause injury and damage, including PFOA and PFOS
15  contamination of public groundwater supply wells. Defendants committed each of the
16  above-described acts and omission knowingly, willfully, and with oppression, fraud,
17  and/or malice. Such conduct was performed to promote sales of AFFF, in conscious
18  disregard to the probable dangerous consequences of that conduct and its reasonably
19  foreseeable impacts on public health and welfare. Therefore, Plaintiffs request an award of
20  punitive damages in an amount sufficient to punish these Defendants and that fairly
21  reflects the aggravating circumstances alleged herein.

22      190.   Defendants are jointly and severally liable for all such damages, and
23  Plaintiffs are entitled to recover all such damages and other relief as set forth below.

24
25
26

## COUNT IV

### PUBLIC NUISANCE AS PER A.R.S. § 13-2917

191.   Plaintiffs incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

192.   Plaintiffs provide drinking water to their residents and customers from their groundwater supply wells that are used for drinking, bathing, cleaning, washing, cooking, water vegetables, and other uses.

193.   Because Plaintiffs are public entities, the water they provide to residential and commercial customers is a public and commonly held resource. Members of the public have a right to have their water remain clean, safe, and free of Defendants' toxic contamination.

194.   Defendants' acts and omissions, including their manufacture, sale, supply, marketing, and defective design of, and/or failure to warn regarding PFOA and/or PFOS in AFFF contaminated Plaintiffs' Impacted Systems, rendering water served from them unfit for human consumption and a public health hazard.

195.   Consequently, Defendants substantially interfered with and caused damage to a public or common resource that endangered the use of property, was injurious to health, and interfered with the comfortable enjoyment of life or property by an entire community.

196.   As an owner of water production wells and purveyor of drinking water, Plaintiffs suffered injuries different in kind from the community at large because they rely upon the water production wells for their public service functions.

197.   Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of the groundwater supply. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or

1   malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to

2   the probable dangerous consequences of that conduct and its reasonably foreseeable

3   impacts on public health and welfare. Therefore, Plaintiffs request an award of punitive

4   damages in an amount enough to punish these Defendants and that fairly reflects the

5   aggravating circumstances alleged herein.

6         198.   Defendants are jointly and severally liable for all such damages, and

7   Plaintiffs are entitled to recover all such damages and other relief as set forth below.

8                        **COUNT V**

9                   **PRIVATE NUISANCE**

10        199.   Plaintiffs incorporate by reference each and every allegation set forth in all

11   preceding paragraphs as if fully restated herein.

12        200.   Plaintiffs are the owners of land, easements, and water rights that permit

13   them to extract groundwater for use in their wells to provide drinking water to its

14   customers.

15        201.   Defendants' intentional, negligent, and/or reckless conduct, as alleged

16   herein, has resulted in substantial contamination of the Impacted Systems by PFOA and

17   PFOS, human carcinogens that cause adverse human health effects and, without

18   intervention by Plaintiffs to test, discontinue the use of impacted wells, treat the water,

19   and operate their public water supply distribution infrastructure, would render water

20   undrinkable.

21        202.   Defendants' manufacture, distribution, sale, supply, and marketing of

22   AFFF-containing PFOA and PFOS was unreasonable because Defendants had knowledge

23   of PFOA's and PFOS's unique and dangerous chemical properties and knew that

24   contamination of public groundwater supply wells was substantially certain to occur, but

25   failed to provide adequate warnings of, or take any other precautionary measures to

26   mitigate, those hazards.

203.    The contamination caused, contributed to, and/or maintained by Defendants substantially and unreasonably interferes with the Plaintiffs' property rights to appropriate, use, and enjoy water from its Impacted Systems.

204.    Each Defendant has caused, contributed to, and/or maintained such nuisance, and is a substantial contributor to such nuisance.

205.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, each Plaintiff has incurred, is incurring, and will continue to incur substantial damages related to PFOA and PFOS contamination of the Impacted Systems, including but not limited to capital costs expended on treatment systems, piping and other modifications to the supply systems, past and future operation and maintenance of the treatment systems, engineering costs, legal costs, and sampling costs.

206.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of Plaintiffs' groundwater supplies. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

207.    Defendants are jointly and severally liable for all such damages, and Plaintiffs are entitled to recover all such damages and other relief as set forth below.

## COUNT VI

### TRESPASS

208.    Plaintiffs incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

32

209.  Plaintiffs own and possess their drinking water production systems, including drinking water production wells that extract groundwater in Tucson, and Marana, Arizona.

210.  Plaintiffs, actually and actively, exercise their rights to appropriate and use groundwater drawn from its wells, including from the Impacted Systems.

211.  Plaintiffs did not give any Defendant permission to cause PFOA or PFOS to enter their water supply.

212.  Defendants knew or reasonably should have known that:

    a.  PFOA and PFOS have a propensity to infiltrate groundwater aquifers when released to the environment;

    b.  PFOA and PFOS are mobile and persistent groundwater contaminants capable of moving substantial distances within aquifers;

    c.  PFOA and PFOS are toxic to human health; and

    d.  PFOA and PFOS are therefore hazardous to public water systems and human health and welfare.

213.  Defendants manufactured, promoted, marketed, distributed, and/or sold AFFF-containing PFOA and PFOS, which Defendants knew or reasonably should have known would virtually certainly be discharged and release toxic PFOA and PFOS into the ground and intrude upon, contaminate, and damage Plaintiffs' possessory interest.

214.  Defendants' willful conduct directly resulted in the placement of its product, AFFF and its PFC constituents, in groundwater owned by Plaintiffs without permission or right of entry.

215.  Each Defendant is a substantial factor in bringing about the contamination of Plaintiffs' Impacted Systems, and each Defendant aided and abetted the trespasses and is jointly responsible for the injuries and damage caused to Plaintiffs.

216.     As a direct and proximate result of Defendants' acts and omissions resulting in PFOA and PFOS entering the Impacted Systems, Plaintiffs sustained actual injuries and damages related to the PFOA and/or PFOS contamination of their Impacted Systems, including but not limited to capital costs expended on treatment systems, piping and other modifications to the supply systems, past and future operation and maintenance of the treatment systems, engineering costs, legal costs, and sampling costs.

217.     Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of Plaintiffs' public groundwater supplies. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiffs request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

218.     Defendants are jointly and severally liable for all such substantial damages, and Plaintiffs are entitled to recover all such substantial damages and other relief as set forth below.

### JURY DEMAND

Plaintiffs demand a trial by jury of all claims asserted in this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, the City of Tucson and Town of Marana, Arizona pray for a judgment against these Defendants for:

1.     Plaintiffs are not asking for any equitable or injunctive relief, but compensatory damages only;

34

2.      Compensatory damages in an amount to be demonstrated and proven at trial but which is:

        a.      Above the jurisdictional minimum of this court on the First Cause of Action;

        b.      Above the jurisdictional minimum of this court on the Second Cause of Action;

        c.      Above the jurisdictional minimum of this court on the Third Cause of Action; and

        d.      Above the jurisdictional minimum of this court on the Fourth Cause of Action;

        e.      Above the jurisdictional minimum of this court on the Fifth Cause of Action;

        f.      Above the jurisdictional minimum of this court on the Sixth Cause of Action; and

3.      Punitive damages in an amount to be determined at trial;

4.      Interest on the damages according to law;

5.      Costs, disbursements and attorneys' fees of this lawsuit; and

6.      Any other and further relief as the Court deems just, proper and equitable.

///

///

///

35

RESPECTFULLY SUBMITTED this 8th day of November, 2018.

GALLAGHER & KENNEDY, P.A.


By: /s/ Kevin D. Neal
 Kevin D. Neal
 Kenneth N. Ralston
 2575 East Camelback Road
 Phoenix, Arizona  85016-9225

NAPOLI SHKOLNIK PLLC
 Paul J. Napoli
 Louis R. Caro
 Tate J. Kunkle
 Aaron Modiano
 360 Lexington Ave., 11th Floor
 New York, NY, 10017

*Attorneys for Plaintiffs City of Tucson*
*and Town of Marana*

6982322v1/99-8826

36

Person/Attorney Filing: Kevin D Neal
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602) 530-8171
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011640, Issuing State: AZ
Attorney E-Mail Address: kevin.neal@gknet.com

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

City of Tucson, et al.
Plaintiff(s),

V.

3M Company, FKA Minnesota Mining and
Manufacturing Co., et al.
Defendant(s).

Case No. __C20185523__

HON. BRENDEN J GRIFFIN

**SUMMONS**

To: National Foam, Inc.

WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS
YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT
UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.

1.  A lawsuit has been filed against you. A copy of the lawsuit and other related court
paperwork has been served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
Answer in writing with the Court, and you must pay the required filing fee. To file your
Answer, take or send the papers to Office of the Clerk of the Superior Court,
110 West Congress Street, Tucson, Arizona 85701 or electronically file your
Answer through AZTurboCourt at www.azturbocourt.gov.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
of this Summons. Note: If you do not file electronically you will not have electronic
access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of
Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
date of service, not counting the day of service. If the papers were served on you
outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR
DAYS, not counting the day of service.

AZTurboCourt.gov Form Set #2976425

Requests for reasonable accommodations for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of Pima_____ *November 08, 2018*_____.

*Toni L. Hellon*
Clerk of the Superior Court

By: *Arthur Robles*_____
        Deputy Clerk



12/30/2016 CAC

Person/Attorney Filing: Kevin D Neal
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602) 530-8171
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011640, Issuing State: AZ
Attorney E-Mail Address: kevin.neal@gknet.com

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

City of Tucson, et al.
Plaintiff(s),

V.

3M Company, FKA Minnesota Mining and
Manufacturing Co., et al.
Defendant(s).

Case No. C20185523

HON. BRENDEN J GRIFFIN

**SUMMONS**

To: Tyco Fire Products, LP

WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS
YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT
UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.

1.  A lawsuit has been filed against you. A copy of the lawsuit and other related court
paperwork has been served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
Answer in writing with the Court, and you must pay the required filing fee. To file your
Answer, take or send the papers to Office of the Clerk of the Superior Court,
110 West Congress Street, Tucson, Arizona 85701 or electronically file your
Answer through AZTurboCourt at www.azturbocourt.gov.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
of this Summons. Note: If you do not file electronically you will not have electronic
access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of
Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
date of service, not counting the day of service. If the papers were served on you
outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR
DAYS, not counting the day of service.

AZturboCourt.gov Form Set #2376425

Requests for reasonable accommodations for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of Pima _____ *November 08, 2018* ··· _____.

*Toni L. Hellon*
Clerk of the Superior Court

By: *Arthur Robles* _____
     Deputy Clerk



12/30/2016 CAC

Person/Attorney Filing: Kevin D Neal
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602) 530-8171
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011640, Issuing State: AZ
Attorney E-Mail Address: kevin.neal@gknet.com

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

City of Tucson, et al.
Plaintiff(s),

V.

3M Company, FKA Minnesota Mining and
Manufacturing Co., et al.
Defendant(s).

Case No. C20185523

HON. BRENDEN J GRIFFIN

**SUMMONS**

To: Chemguard, Inc.

WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS
YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT
UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.

1. A lawsuit has been filed against you. A copy of the lawsuit and other related court
paperwork has been served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
Answer in writing with the Court, and you must pay the required filing fee. To file your
Answer, take or send the papers to Office of the Clerk of the Superior Court,
110 West Congress Street, Tucson, Arizona 85701 or electronically file your
Answer through AZTurboCourt at www.azturbocourt.gov.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
of this Summons. Note: If you do not file electronically you will not have electronic
access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of
Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
date of service, not counting the day of service. If the papers were served on you
outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR
DAYS, not counting the day of service.

12/30/2016 CAC

Requests for reasonable accommodations for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of Pima _____ *November 08, 2018* _____.

*Toni L. Hellon*
Clerk of the Superior Court

By: *Arthur Robles* _____
         Deputy Clerk



Person/Attorney Filing: Kevin D Neal
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602) 530-8171
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011640, Issuing State: AZ
Attorney E-Mail Address: kevin.neal@gknet.com

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

City of Tucson, et al.
Plaintiff(s),

V.

3M Company, FKA Minnesota Mining and
Manufacturing Co., et al.
Defendant(s).

Case No. C20185523

HON. BRENDEN J GRIFFIN

**SUMMONS**

To: Buckeye Fire Equipment Company

WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS
YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT
UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.

1.  A lawsuit has been filed against you. A copy of the lawsuit and other related court
paperwork has been served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
Answer in writing with the Court, and you must pay the required filing fee. To file your
Answer, take or send the papers to Office of the Clerk of the Superior Court,
110 West Congress Street, Tucson, Arizona 85701 or electronically file your
Answer through AZTurboCourt at www.azturbocourt.gov.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
of this Summons. Note: If you do not file electronically you will not have electronic
access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of
Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
date of service, not counting the day of service. If the papers were served on you
outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR
DAYS, not counting the day of service.

12/30/2016 CAC

AZTurboCourt.gov Form Set #2976425

Requests for reasonable accommodations for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  Pima                                    *November 08, 2018*                                    .

*Toni L. Hellon*
Clerk of the Superior Court

By: *Arthur Robles*
      Deputy Clerk



12/30/2016 CAC

Person/Attorney Filing: Kevin D Neal
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602) 530-8171
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011640, Issuing State: AZ
Attorney E-Mail Address: kevin.neal@gknet.com

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF PIMA

City of Tucson, et al.
Plaintiff(s),

V.

3M Company, FKA Minnesota Mining and
Manufacturing Co., et al.
Defendant(s).

Case No. __C20185523__

HON. BRENDEN J GRIFFIN

**SUMMONS**

To: 3M Company, FKA Minnesota Mining and Manufacturing Co.

WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.

1. A lawsuit has been filed against you. A copy of the lawsuit and other related court paperwork has been served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Office of the Clerk of the Superior Court, 110 West Congress Street, Tucson, Arizona 85701 or electronically file your Answer through AZTurboCourt at www.azturbocourt.gov. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If the papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS, not counting the day of service.

12/30/2016 CAC

Requests for reasonable accommodations for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of Pima _____ *November 08, 2018* _____.

*Toni L. Hellon*
Clerk of the Superior Court

By: *Arthur Robles* _____
     Deputy Clerk



12/30/2016 CAC

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT

11/8/2018 11:38:48 AM

BY: ARTHUR ROBLES
DEPUTY

Case No. C20185523
HON. BRENDEN J GRIFFIN

PERSON/ATTORNEY FILING: **Kevin D Neal**
MAILING ADDRESS: **2575 E Camelback Rd, Ste 1100**
CITY, STATE, ZIP CODE: **Phoenix, AZ 85016**
PHONE NUMBER: **(602) 530-8171**
E-MAIL ADDRESS: **kevin.neal@gknet.com**
[ ☐ ] REPRESENTING SELF, WITHOUT AN ATTORNEY
(IF ATTORNEY) STATE BAR NUMBER: **011640, Issuing State: AZ**


## ARIZONA SUPERIOR COURT, PIMA COUNTY

City of Tucson, et al.
Plaintiff(s),

V.

3M Company, FKA Minnesota Mining
and Manufacturing Co., et al.
Defendant(s).

CASE NO: _____

**RULE 102(a) FASTAR CERTIFICATE**


The undersigned certifies that he or she knows the eligibility criteria set by FASTAR Rule 101(b) and

certifies that this case:

## (NOTE – YOU MUST CHECK ONE OF THE BOXES BELOW OR THE CLERK WILL NOT ACCEPT THIS FORM.)

☐ **DOES** meet the eligibility criteria established by Rule 101(b); or

☒ **DOES NOT** meet the eligibility criteria established by Rule 101(b).


Dated: November 08, 2018

Kevin D Neal /s/
SIGNATURE

**In the Superior Court of the State of Arizona**
**In and For the County of** Pima

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
11/8/2018 11:38:48 AM
BY: ARTHUR ROBLES
DEPUTY
Case No. C20185523
HON. BRENDEN J GRIFFIN

Case Number _____

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorney Kevin D Neal

Attorney Bar Number 011640, AZ

Plaintiff's Name(s): (List all)
City of Tucson

_____

_____

_____

*Delivery Date: November 08, 2018 11:38 AM MST*

Keyword / Matter #: 29129-0001

Plaintiff's Address:
Telephone Number: (602) 530-8170
Email: kevin.neal@gknet.com

_____

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All) 3M Company, FKA Minnesota Mining and Manufacturing Co., Buckeye Fire Equipment Company, Chemguard, Inc., Tyco Fire

(List additional defendants on page two and/or attach a separate sheet)

## NATURE OF ACTION

(Place an "**X**" next to the **one** case category that most accurately describes your primary case.)

**TORT MOTOR VEHICLE:**
☐ Non-Death/Personal Injury
☐ Property Damage
☐ Wrongful Death

**TORT NON-MOTOR VEHICLE:**
☐ Negligence
☐ Product Liability – Asbestos
☐ Product Liability – Tobacco
☐ Product Liability – Toxic/Other
☐ Intentional Tort
☐ Property Damage
☐ Legal Malpractice
☐ Malpractice – Other professional
☐ Premises Liability
☐ Slander/Libel/Defamation
☒ Other (Specify) Environmental

**MEDICAL MALPRACTICE:**
☐ Physician M.D.        ☐ Hospital
☐ Physician D.O         ☐ Other

**CONTRACTS:**
☐ Account (Open or Stated)
☐ Promissory Note
☐ Foreclosure
☐ Buyer-Plaintiff
☐ Fraud
☐ Other Contract (i.e. Breach of Contract)
☐ Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)
    ☐ Six to Nineteen Structures
    ☐ Twenty or More Structures

**OTHER CIVIL CASE TYPES:**
☐ Eminent Domain/Condemnation
☐ Eviction Actions (Forcible and Special Detainers)
☐ Change of Name
☐ Transcript of Judgment
☐ Foreign Judgment
☐ Quiet Title

AZturboCourt.gov Form Set #2976425

☐ Forfeiture
☐ Election Challenge
☐ NCC- Employer Sanction Action (A.R.S. §23-212)
☐ Injunction against Workplace Harassment
☐ Injunction against Harassment
☐ Civil Penalty
☐ Water Rights (Not General Stream Adjudication)
☐ Real Property
☐ Special Action against Lower Courts
   (See lower court appeal cover sheet in Maricopa)
☐ Immigration Enforcement Challenge (A.R.S. §§1-501,
1-502, 11-1051)

**UNCLASSIFIED CIVIL:**
☐ Administrative Review
   (See lower court appeal cover sheet in Maricopa)
☐ Tax Appeal
(All other tax matters must be filed in the AZ Tax Court)
☐ Declaratory Judgment
☐ Habeas Corpus

☐ Landlord Tenant Dispute- Other
☐ Declaration of Factual Innocence (A.R.S. §12-771)
☐ Declaration of Factual Improper Party Status
☐ Vulnerable Adult (A.R.S. §46-451)
☐ Tribal Judgment
☐ Structured Settlement (A.R.S. §12-2901)
☐ Attorney Conservatorships (State Bar)
☐ Unauthorized Practice of Law (State Bar)
☐ Out-of-State Deposition for Foreign Jurisdiction
☐ Secure Attendance of Prisoner
☐ Assurance of Discontinuance
☐ In-State Deposition for Foreign Jurisdiction
☐ Eminent Domain– Light Rail Only
☐ Interpleader– Automobile Only
☐ Delayed Birth Certificate (A.R.S. §36-333.03)
☐ Employment Dispute- Discrimination
☐ Employment Dispute-Other
☐ Verified Rule 45.2 Petition
☐ Other (Specify) _____

---

## RULE 26.2 DISCOVERY TIER OR AMOUNT PLEADED:

(State the amount in controversy pleaded or place an "X" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.)

☐ Amount Pleaded $_____  ☐ Tier 1   ☐ Tier 2   ☒ Tier 3

---

## EMERGENCY ORDER SOUGHT:

☐ Temporary Restraining Order   ☐ Provisional Remedy   ☐ OSC   ☐ Election Challenge
☐ Employer Sanction   ☐ Other (Specify) _____

---

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the commercial court under Rule 8.1, and plaintiff requests assignment of this case to the commercial court. More information on the commercial court, including the most recent forms, are available on the court's website at https://www.superiorcourt.maricopa.gov/commercial-court/.

Additional Plaintiff(s)
Town of Marana _____

_____

Additional Defendant(s)
Products, LP, National Foam, Inc. _____

_____

AZturboCourt.gov Form Set #2397425

Attachment Page <u>1</u> (of <u>1</u> )

To <u>Civil Cover Sheet</u>

---

**ATTORNEY INFORMATION:**

ATTORNEY FILING - PRIMARY ATTORNEY:

Kevin D Neal

Bar Number: 011640, Issuing State: AZ

Law Firm: Gallagher and Kennedy P.A.

Address: 2575 E Camelback Rd, Ste 1100


Phoenix, AZ 85016

Telephone Number: (602) 530-8171

Email: kevin.neal@gknet.com


ATTORNEY #2

Kenneth N Ralston

Bar Number: 034022, Issuing State: AZ

Law Firm: Gallagher and Kennedy P.A.

Address: 2575 E Camelback Rd, Ste 1100

Phoenix, AZ 85016

Telephone Number: (602)530-8000


**ATTACHED DOCUMENTS LIST:**

Summons - Defendant #1

Summons - Defendant #2

Summons - Defendant #3

Summons - Defendant #4

Summons - Defendant #5

Complaint

---

AZturboCourt.gov Form Set #2976425

If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.

| CASE ATTACHMENT COVER PAGE | (ENDORSED) **ELECTRONICALLY FILED** |
|---|---|
| **PIMA COUNTY**<br><br>STREET ADDRESS: 110 West Congress Street<br><br>MAILING ADDRESS:<br><br>CITY AND ZIP CODE: Tucson, AZ 85701<br><br>BRANCH NAME: Superior Court<br><br>WEBSITE: | **Pima**<br><br>on **Dec 21, 2018**<br><br>*Deputy Clerk:* Alan Walker |
| ATTACHMENT NAME: **Notice of Removal to Federal Court: Notice of Removal** | X _____ |
| CASE NAME: **CITY OF TUCSON VS. 3M COMPANY** | CASE NUMBER:<br><br>C20185523 |
| Please log on to www.TurboCourt.com regularly for updates | |

Please staple this to your original attachment

Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone 602.229.5200

Jeremy A. Lite (#020554)
jeremy.lite@quarles.com
Ryan S. Patterson (#024753)
ryan.patterson@quarles.com
Kristen Arredondo (AZ Bar #034052)
kristen.arredondo@quarles.com

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Liam J. Montgomery (not appearing in State Court)
lmontgomery@wc.com
J. Liat Rome (not appearing in State Court)
jrome@wc.com

*Attorneys for Defendants Tyco Fire Products L.P. and Chemguard, Inc.*

SUPERIOR COURT OF THE STATE OF ARIZONA

COUNTY OF PIMA

| | |
|---|---|
| CITY OF TUCSON and TOWN OF MARANA,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>3M COMPANY, f/k/a Minnesota Mining and Manufacturing Co.; BUCKEYE FIRE EQUIPMENT COMPANY; CHEMGUARD, INC.; TYCO FIRE PRODUCTS L.P.; and NATIONAL FOAM, INC.,<br><br>　　　　　　Defendants. | NO. C20185523<br><br>**NOTICE OF REMOVAL**<br><br>(Assigned to the Honorable Brenden J. Griffin) |

1    Defendants Tyco Fire Products L.P., and Chemguard, Inc., ("Defendants") having

2    filed their Notice of Removal of the above-captioned action with the Clerk of the United

3    States District Court for the District of Arizona, Tucson Division, on December 21, 2018,

4    hereby notify this Court of the removal of this case pursuant to 28 U.S.C. §§ 1332, 1441,

5    1442(a)(1) and 1446.   A copy of the Notice of Removal (without exhibits) filed with the

6    United States District Court is attached hereto as Exhibit A.

7    Defendants certify that Plaintiffs have been notified of this removal and served

8    with a copy of the Notice of Removal.  Upon the filing of its Notice of Removal with the

9    United States District Court, Defendants have effectuated the removal of this case, and the

10   Superior Court shall proceed no further in this action unless the case is remanded pursuant

11   to 28 U.S.C. § 1446(d).

12   DATED this 21st day of December, 2018.

13   QUARLES & BRADY LLP

14

15   By /s/ Jeremy A. Lite

16   Jeremy A. Lite
     Ryan S. Patterson
17   Kristen Arredondo
     Quarles & Brady, LLP
18   Renaissance One
     Two North Central Avenue
19   Phoenix, AZ 85004-2391

20   WILLIAMS & CONNOLLY LLP
     725 Twelfth Street, N.W.
21   Washington, D.C. 20005
     Telephone: (202) 434-5000
22   Liam J. Montgomery
     J. Liat Rome
23   (not appearing in State Court)

24   *Attorneys for Defendants Tyco Fire Products L.P.*
     *and Chemguard, Inc.*

25

26

1   ORIGINAL of the foregoing electronically
    filed this 21st day of December, 2018, with the
2   Clerk of the Pima County Superior Court

3   COPY of the foregoing mailed this 21st day
    of December, 2018, to:
4
    Kevin D. Neal
5   Kenneth N. Ralston
    GALLAGHER & KENNEDY, P.A.
6   2575 East Camelback Road
    Phoenix, Arizona 85016-9225
7
    Paul J. Napoli
8   Louise Caro
    Tate J. Kunkle
9   Aaron Modiano
    NAPOLI SHKOLNIK PLLC
10  360 Lexington Avenue, 11th Floor
    New York, New York 10017
11  *Attorneys for Plaintiffs City of Tucson and Town of Marana*

12  Richard F. Bulger (*pro hac forthcoming*)
    Tyler Alfermann (*pro hac forthcoming*)
13  MAYER BROWN LLP
    71 South Wacker Drive
14  Chicago, IL 60606
    *Attorneys for Defendant 3M Company*
15
    Aaron T. Lloyd
16  GREENBERG TRAURIG LLP
    2375 East Camelback Road, Suite 700
17  Phoenix, AZ 85016

18  Keith E. Smith
    GREENBERG TRAURIG LLP
19  2700 Two Commerce Square
    2001 Market Street
20  Philadelphia, PA 19103
    *Attorneys for Defendant National Foam, Inc.*
21
    Michael L. Carpenter
22  GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.
    516 South New Hope Road
23  Post Office Box 2636
    Gastonia, NC 28053
24  *Attorneys for Defendant Buckeye Fire Equipment Company*

25

26  *s/ Maria Marotta*_____

# EXHIBIT A

Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone 602.229.5200

Jeremy A. Lite (AZ Bar #020554)
jeremy.lite@quarles.com
Ryan S. Patterson (AZ Bar #024753)
ryan.patterson@quarles.com
Kristen Arredondo (AZ Bar #034052)
kristen.arredondo@quarles.com

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 434-5000
Liam J. Montgomery (D.C. Bar #991205)
lmontgomery@wc.com
J. Liat Rome (D.C. Bar #1033276)
jrome@wc.com
(PHV applications forthcoming)

*Attorneys for Defendants Chemguard, Inc. and*
*Tyco Fire Products L.P.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| City of Tucson and Town of Marana, | NO. _____ |
| Plaintiffs, | (Formerly Pima County Superior Court Case No. C20185523) |
| vs. | **NOTICE OF REMOVAL** |
| 3M Company, f/k/a Minnesota Mining and Manufacturing Co.; Buckeye Fire Equipment Company; Chemguard, Inc.; Tyco Fire Products, L.P.; and National Foam Inc., | |
| Defendants. | |

QB\510241.00070\55278797.3

1    Defendants Tyco Fire Products LP ("Tyco") and Chemguard, Inc. ("Chemguard"),
2  by undersigned counsel, hereby give notice of removal of this action, pursuant to 28
3  U.S.C. §§ 1332, 1441, 1442(a)(1) and 1446, and LRCiv 3.6, from the Pima County
4  Superior Court to the United States District Court for the District of Arizona, Tucson
5  Division.  As grounds for removal, Tyco and Chemguard state as follows:

6  **I.     PRELIMINARY STATEMENT**

7    1.    Plaintiffs seek to hold Tyco and other defendants liable based on their
8  alleged conduct in manufacturing, marketing and selling firefighting chemical agents,
9  aqueous film-forming foam ("AFFF"), to the United States military—pursuant to
10 government contracts and in accordance with the military's rigorous specifications—and
11 others. This action is removable to federal court based on diversity jurisdiction under 28
12 U.S.C. § 1441(b).  Further, Tyco intends to assert the federal "government contractor"
13 defense in response to Plaintiffs' claims.  Under the federal officer removal statute, 28
14 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal
15 defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal
16 statute's purpose of protecting persons who, through contractual relationships with the
17 Government, perform jobs that the Government otherwise would have performed."
18 *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

19 **II.    STATE COURT PROCEEDINGS**

20   2.    Plaintiffs commenced the above-captioned action in the Superior Court of
21 the State of Arizona, County of Pima, by filing a complaint on November 8, 2018, bearing
22 Case No. C20185523 (the "Complaint") against the 3M Company, Chemguard, Buckeye
23 Fire Equipment Company, National Foam, Inc., and Tyco.  In accordance with 28 U.S.C.
24 § 1441(a) and LRCiv 3.6(b), a copy of all pleadings and other documents served on Tyco
25 and filed in the Superior Court of the State of Arizona, County of Pima, is attached hereto
26 as Exhibit A, along with a Verification that they are true and correct copies.

3.     Plaintiffs allege, inter alia, that Defendants manufactured, marketed, and sold a product, namely AFFF, which contained allegedly toxic constituents that allegedly contaminated Plaintiffs' public drinking water supply wells and systems. See Compl. at ¶¶ 2, 3, 4, 9, 11, and 13. Plaintiffs allege that AFFF contained perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA"), as well as related perfluorinated compounds that behave in similar ways. Id. at ¶ 3.

4.     Chemguard was served with the Complaint on November 30, 2018. Tyco was served with the Complaint on December 3, 2018.   There have been no further proceedings in this action in the Superior Court of the State of Arizona, County of Pima, and no motions are pending.   Tyco and Chemguard file this Notice of Removal within 30 days from service of the Complaint. Thus, this Notice of Removal is timely filed. See 28 U.S.C. § 1446(b)(1).

5.     In accordance with 28 U.S.C. § 1441(a) and LRCiv 3.6(a), Tyco and Chemguard promptly will serve written notice of the filing of this Notice of Removal upon all identified parties and has filed with the Clerk of the Pima County Superior Court a copy of this Notice of Removal

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 118(a) and 1441(a), because the United States District Court for the District of Arizona is the federal judicial district and division embracing the Superior Court of the State of Arizona, Pima County, where the action was originally filed.

7.     By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

8.     Tyco reserves the right to amend or supplement this Notice of Removal.

9.     If any questions arise as to the propriety of the removal of this action, Tyco

QB\510241.00070\55278797.3

1    requests the opportunity to present a brief and oral argument in support of removal.

2            10.    As demonstrated below, this action is removable to federal court based on

3    diversity jurisdiction under 28 U.S.C. § 1332.   The action is also removable to federal

4    court based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1).

5            11.    Tyco is not required to notify or obtain the consent of any other defendant in

6    this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  *See, e.g.,*

7    *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006). Nevertheless, all

8    defendants that have been properly joined and served in this action as of this date join in

9    or consent to the removal to this Court pursuant to the consents attached hereto as

10   Exhibits B, C and D.

11   **III.    REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION**

12           12.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §

13   1332.  Diversity jurisdiction exists where (1) the amount in controversy exceeds $75,000,

14   exclusive of interests and costs, and (2) the suit is between citizens of different states.

15           **A.    Complete Diversity of Citizenship Exists**

16           13.    The Complaint alleges that Plaintiffs are Arizona municipal corporations

17   and political subdivisions of the State of Arizona; thus they are citizens of Arizona. See

18   Compl. at ¶¶ 20 and 52. *See Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A]

19   political subdivision of a State, unless it is simply the arm or alter ego of the State, is a

20   citizen of the State for diversity purposes.") (footnote and internal quotation marks

21   omitted).

22           14.    The Complaint alleges that the 3M Company is incorporated in Delaware

23   and maintains its principal place of business in Minnesota; thus it is a citizen of Delaware

24   and Minnesota. See Compl. at ¶ 82.

25           15.    The Complaint alleges that Tyco is a limited partnership formed in

26   Delaware with its principal place of business in Pennsylvania. See Compl. at ¶ 86.  As a

QB\510241.00070\55278797.3

1  limited partnership, Tyco has the citizenship of each of its general and limited partners;
2  the location of Tyco's principal place of business is legally irrelevant to its citizenship.
3  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015); *Johnson v.*
4  *SmithKline Beecham Corp.*, 724 F.3d 337, 347 48 (3d Cir. 2013).  Tyco's partners are
5  Central Sprinkler LLC and Fire Products GP Holding LLC.   These limited liability
6  companies have the citizenship of their membership, which is as follows:   (a) Fire
7  Products GP Holding, LLC is wholly owned by its single member, Central Sprinkler LLC,
8  (b) Central Sprinkler LLC is wholly owned by its single member, Tyco International
9  Management Company, LLC, (c) Tyco International Management Company, LLC is
10 wholly owned by its single member, Tyco Fire & Security US Holdings LLC, (d) Tyco
11 Fire & Security US Holdings LLC is wholly owned by its single member, Tyco Fire &
12 Security (US) Management, Inc.   Tyco Fire & Security (US) Management, Inc. is
13 incorporated in Nevada, and its principal place of business is in New Jersey.  Thus, Tyco
14 is a citizen of Nevada and New Jersey.

15         16.    The Complaint alleges that Buckeye Fire Equipment Company is
16 incorporated in Ohio and maintains its principal place of business in North Carolina; thus,
17 it is a citizen of Ohio and North Carolina.  See Compl. at ¶ 93.

18         17.    The Complaint alleges that Chemguard is a Texas corporation with its
19 principal place of business in Wisconsin; thus it is a citizen of Texas and Wisconsin. See
20 Compl. at ¶ 90.

21         18.    The Complaint alleges that National Foam, Inc. is a Delaware corporation
22 with its principal place of business in North Carolina; thus it is a citizen of Delaware and
23 North Carolina. See Compl. at ¶ 95.

24         19.    Plaintiffs do not allege that any defendant is a citizen of Arizona.

25         20.    Because Plaintiffs are citizens of Arizona and each of the Defendants is not
26 a citizen of Arizona, complete diversity exists among the parties to this action.

QB\510241.00070\55278797.3

**B.**   **The Amount in Controversy Requirement Is Satisfied**

21.     Pursuant to 28 U.S.C. §1446(c)(2)(B), removal is proper if the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

22.     Tyco's Notice of Removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

23.     When a plaintiff fails to expressly state the amount of damages she seeks, a court may determine whether the threshold amount is satisfied based on "a reasonable reading of the value of the rights being litigated." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002).

24.     In their Complaint, Plaintiffs identify several public drinking water supply wells and systems allegedly affected by PFOA and/or PFOS contamination. See Compl. at ¶ 165 (listing "City's Central Wellfield, the Northwest Well Field, the [Tucson Airport Remediation Project] system, the Town's AL and PR Water Systems, and the Plaintiffs' wastewater and reclaimed water systems" as the impacted systems). Plaintiffs allege they have incurred, are incurring, and will incur substantial damages to all impacted systems, "including but not limited to capital costs expended on treatment systems, piping and other modifications to the supply systems, past and future operation and maintenance of the treatment systems, engineering costs, legal costs, and sampling costs." See Compl. at ¶ 180.

25.     Considering the many water supply wells and systems alleged to have been affected and the scope of the recovery sought, it is facially apparent from the Plaintiffs' pleadings that they seek more than $75,000. *See Spectacor Mgmt. Grp. v. Brown*, 131 F.3d 120, 122 (3d Cir. 1997) ("As a general rule, [the amount in controversy] is determined from the good faith allegations appearing on the face of the complaint."); *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993).

QB\510241.00070\55278797.3

26.     Thus, the requirements for diversity jurisdiction are satisfied and this case is removable to federal court by Tyco under 28 U.S.C. § 1441(a).

## IV.     REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

27.     Although this action is removable based on diversity jurisdiction alone, Tyco also asserts a separate and independent basis for federal jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

28.     The federal officer removal statute provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) the defendant was acting "under color of" federal office at the time of the allegedly tortious conduct; and (4) the defendant raises a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124 25, 129 31, 134 35 (1989); *Isaacson*, 517 F.3d at 135; *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014).

29.     Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).  To the contrary, "[t]he statute as a whole must be liberally

QB\510241.00070\55278797.3

1   construed" in favor of removal. *Isaacson*, 517 F.3d at 136.

2       30.   The allegations in Plaintiffs' Complaint and Tyco's anticipated defenses

3   (along with the anticipated defenses of all Defendants) directly implicate the federal

4   officer removal statute.

5       31.   Plaintiffs generally allege that Defendants manufactured and sold AFFFs

6   that allegedly contained the chemicals PFOS and/or PFOA. See Compl. ¶¶ 2 and 3.

7       32.   Plaintiffs also allege that "[s]ampling results of surface water, groundwater,

8   and soil, at or near the [Davis-Monthan Air Force Base], [Tucson International Airport]

9   and/or Tucson Fire Training Academy demonstrate the presence of elevated

10   concentrations of PFCs, specifically PFOA and PFOS . . . ." See Compl. ¶ 143. Plaintiffs

11   allege that use of Defendants' AFFF "resulted in the discharge of PFCs, including PFOA

12   and PFOS, into the environment and drinking water supplies of the City and Town." Id. at

13   ¶ 145.

14       33.   All requirements for removal under § 1442(a)(1) are satisfied here. *Cf., e.g.,*

15   *Ayo v. 3M Company*, No. 18-CV-0373, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018)

16   (Seybert, J.) (denying motion to remand and finding that federal officer removal was

17   proper in case with materially identical allegations against Tyco and other manufacturers

18   of AFFF).

19      A.   **MilSpec AFFF**

20       34.   Since the 1960s, the United States military has used AFFF that met military

21   specifications ("MilSpec AFFF") on military bases, airfields, and Navy ships—settings

22   where fuel fires are inevitable and potentially devastating—to train its personnel, put out

23   fires, save lives, and protect property.   Indeed, the United States Naval Research

24   Laboratory developed AFFF in response to deadly, catastrophic fires aboard the aircraft

25

26

QB\510241.00070\55278797.3

1    carriers USS Forrestal in 1967 and USS Enterprise in 1969.[1]   Decades later, the Naval

2    Research Laboratory described the development of AFFF as "one of the most far-reaching

3    benefits to worldwide aviation safety." [2]

4         35.    The manufacture and sale of AFFF procured by the military, and about

5    which Plaintiffs complain here, is governed by rigorous military specifications created and

6    administered by Naval Sea Systems Command.[3]    All such AFFF products must be

7    "qualified for listing on the applicable Qualified Products List" prior to military

8    procurement.[4]  Prior to such listing, a "manufacturer's ... products are examined, tested,

9    and approved to be in conformance with specification requirements."[5]    The MilSpec

10   designates Naval Sea Systems Command as the agency responsible for applying these

11   criteria and determining whether AFFF products satisfy the MilSpec's requirements.[6]

12   After a product is added to the Qualified Products List, "[c]riteria for retention of

13   qualification are applied on a periodic basis to ensure continued integrity of the

14   qualification status."[7]   Naval Sea Systems Command "reserves the right to perform any

15   of the [quality assurance] inspections set forth in the specification where such inspections

---

17   [1] *See* U.S. Naval Research Lab., NRL Press Release 71-09r, Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), *available at* http://bit.ly/2i0y1xJ.

18
19   [2] U.S. Naval Research Lab., NRL Mem. Rep. 1001-06-8951, The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power, at 37 (June 30, 2006), *available at* http://bit.ly/2mujJds.

20
21   [3] *See* Mil-F-24385 (1969).  The November 1969 MilSpec and all its revisions and amendments through September 2017 are available at http://bit.ly/2mmcvqT.

22   [4] *Id.* § 3.1.

23   [5] Dep't of Defense SD-6, Provisions Governing Qualification, at 1 (Feb. 2014), *available at* http://bit.ly/2EI4J27.

24   [6] *See, e.g.*, Ex. H, MIL-PRF-24385F(2) at 18 (2017)).  The cited MilSpec
25   designates Naval Sea Systems Command as the "Preparing Activity."  The "Preparing Activity" is responsible for qualification.  (*See* Dep't of Defense SD-6 at 3.)

26   [7] Dep't of Defense SD-6 at 1.

QB\510241.00070\55278797.3

1    are deemed necessary to ensure supplies and services conform to prescribed

2    requirements."[8]

3        36.    The MilSpec has always required that AFFF contain "fluorocarbon

4    surfactants"—the class of chemical compounds that includes PFOA and PFOS.[9]    The

5    current MilSpec expressly specifies (subject to recently imposed limits) use of PFOA and

6    PFOS in AFFF formulations.[10]

7        **B.    The "Person" Requirement Is Satisfied**

8        37.    The first requirement is satisfied because Tyco (a limited partnership) is a

9    "person" under the statute.  For purposes of § 1442(a)(1), the term "person" includes

10    "'companies, associations, firms, [and] partnerships.'"  *Papp v. Fore-Kast Sales Co.*, 842

11    F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1).  Likewise, the Second Circuit has

12    held that a non natural entity is a "person" for purposes of § 1442(a)(1).  *See Isaacson*,

13    517 F.3d at 135-36.

14        **C.    The "Acting Under" Requirement Is Satisfied**

15        38.    The second requirement ("acting under" a federal officer) is satisfied when

16    an entity assists or helps carry out, the duties or tasks of a federal officer.  *Isaacson*, 517

17    F.3d at 137.  "The words 'acting under' are to be interpreted broadly."  *Id.* at 136.  Federal

18    courts "have explicitly rejected the notion that a defendant could only be 'acting under' a

19    federal officer if the complained of conduct was done at the specific behest of the federal

20    officer or agency."  *Papp*, 842 F.3d at 813.

21

22    _____

23        [8] *See, e.g.*, MIL-PRF-24385F(2) § 4.1 (2017).  In addition, since July 1, 2006,
      airport operators holding an FAA Airport Operating Certificate have been required to use,
24    with limited exceptions, MilSpec AFFF.  *See* FAA CertAlert 16-05 (Sept. 1, 2016)
      (*available at* https://www.faa.gov/airports/airport_safety/certalerts/).

25        [9] *See* Mil-F-24385 § 3.2 (1969).

26        [10] *See* MIL-PRF-24385F(2) § 6.6 & Tables 1, 3 (2017).

-10-                    QB\510241.00070\55278797.3

39.     The requirement is met here because Plaintiffs directly challenge Defendants' alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members); cf. Isaacson, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[11]   Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF. *See Ayo*, 2018 WL 4781145, at *8-9 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF).

40.     Plaintiffs' own allegations confirm that Tyco was "acting under" federal officers of the Department of Defense and its agencies when manufacturing and selling MilSpec AFFF products allegedly used at the sites. Indeed, it is alleged that Tyco and the other Defendants made these products for, and sold them to, the U.S. military, which used them at the sites:

- "Defendants manufactured and sold AFFF products containing PFOA and PFOS that were used and discharged at the [Davis-Monthan Air Force Base]" and Tucson International Airport. (See Compl. ¶ 136.)
- "Defendants' AFFF has been used at the Davis-Monthan Air Force Base . . . for more than four decades in routine training and emergency activities[.]"

---

[11] Fulfilling the Roosevelts' Vision, at 37.

1    (See Compl. ¶ 9.)

2    •    "Defendants' AFFF has likewise been used at the [Tucson International

3         Airport] for several decades in routine training and emergency activities[.]"

4         (See Compl. ¶ 11.)

5    41.    In designing, manufacturing and supplying the MilSpec AFFF products at

6    issue, Tyco acted under the direction and control of one or more federal officers.

7    Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval

8    Sea Systems Command, that govern AFFF formulation, performance, testing, storage,

9    inspection, packaging, and labeling.[12]   Further, the AFFF products in question were

10   subject to various tests by the United States Navy before and after being approved for use

11   by the military and for inclusion on the Qualified Products List maintained by the United

12   States Department of Defense.[13]

13   42.    The applicable MilSpec has always required that AFFF contain constituents

14   from the same class of chemical compounds to which PFOA and PFOS belong.[14]   The

15   current MilSpec expressly specifies (subject to recently imposed limits) use of PFOA and

16   PFOS in AFFF formulations.[15]   Indeed, the September 2017 amendments to the MilSpec

17   recognize that it is not yet technically feasible for manufacturers to completely eliminate

18   PFOA and PFOS "while still meeting all other military specification requirements."[16]

19   **D.    The Causation Requirement Is Satisfied**

20   43.    The third requirement, that a defendant's actions were taken "under color of

21   federal office … has come to be known as the causation requirement." *Isaacson*, 517 F.3d

22   

23   [12] *See* MIL-PRF-24385F(2) (2017).

24   [13] *See* Dep't of Defense, SD-6 at 1.

     [14] *See* Mil-F-24385 § 3.2 (1969).

25   [15] *See* MIL-PRF-24385F(2) § 6.6 & Tables 1, 3 (2017).

26   [16] *Id.* § 6.6.

-12-                                    QB\510241.00070\55278797.3

1   at 137 (internal quotation marks, alterations, and citation omitted).   Like the "acting

2   under" requirement, "[t]he hurdle erected by this requirement is quite low."  *Id.*  Courts

3   "credit Defendants' theory of the case when determining whether [this] causal connection

4   exists." *Isaacson*, 517 F.3d at 137.[17]

5        44.    "To show causation, Defendants must only establish that the act that is the

6   subject of Plaintiffs' attack … occurred while Defendants were performing their official

7   duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original).  Here, the Plaintiffs' claims

8   arise from Defendants' production and sale of AFFF to military specifications.  Plaintiffs

9   allege that the use of PFOS and PFOA in AFFF rendered Defendants' products defective.

10  Defendants contend that the use of such chemicals was required by military specifications.

11  The conflict is apparent:  The design choices Plaintiffs are attempting to impose via state

12  tort law would create a conflict in which Defendants could not "comply with both [their]

13  contractual obligations and the state-prescribed duty of care." *Boyle v. United Tech.*

14  *Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is

15  evidence of a 'casual connection' between the use of PFCs in AFFF and the design and

16  manufacture of AFFF for the government.").

17       **E.    The "Colorable Federal Defense" Requirement Is Satisfied**

18       45.    The fourth requirement ("colorable federal defense") is satisfied by Tyco's

19  assertion of the government contractor defense.  The Second Circuit has repeatedly held

20  that this defense supports removal under § 1442(a)(1).  *See Isaacson*, 517 F.3d at 139;

21  *Crane Co.*, 771 F.3d at 116.

22       46.    At the removal stage, a defendant need only show that its government

23  contractor defense is colorable.  "To be 'colorable,' the defense need not be 'clearly

---

[17] The "Acting Under" and "Under Color Of" prongs overlap. Both "are satisfied if
the actions subject to suit resulted directly from government specifications or direction."
*Albrecht*, 2011 WL 5109532, at *5.

QB\510241.00070\55278797.3

sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116 (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[18]   Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (citation omitted).

47.    Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

48.    Tyco has satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[19]   Plaintiffs' own allegations show that the AFFF products purportedly used at

---

[18] *See also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determines whether there are sufficient facts alleged to raise a colorable defense.").

[19] *See* MIL-PRF-24385F(2) (2017).

1    least one of the sites conformed to the military specification.  Tyco's products appeared

2    on the DOD Qualified Products Listing,[20] which could have happened only if Naval Sea

3    Systems Command had first determined that they conformed to the MilSpec.[21]  *See Ayo*,

4    2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing

5    Defendants' Mil-Spec AFFF is not a stock product and that the government approved

6    reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA,

7    in their products."); *see also id.* ("There is also colorable evidence … that Manufacturing

8    Defendants' AFFF products conformed to the government's reasonably precise

9    specifications.").

10        49.    Moreover, the government was adequately informed regarding alleged

11   product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in

12   specifying and procuring MilSpec AFFF.  Initially, the military specifications have long

13   included testing protocols and requirements for toxicity, chemical oxygen, and biological

14   demand.[22]  Indeed, it is clear that the United States has long understood that AFFF may

15   contain or break down into PFOS and/or PFOA, that AFFF constituents can migrate

16   through the soil and potentially reach groundwater, and that it has been reported that this

17   may raise environmental or health issues.[23]  For example, as early as October 1980, a

18   report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force

---

20    [20] IL-F-24385 QPL/QPD History for Type 3 AFFF, dated June 23, 2016 (*available at* http://www.dcfpnavymil.org/Systems/AFFF/MIL-F-24385%20QPL%20History%20for%20Type%203%20AFFF%20(1).pdf); MIL-F-24385 QPL/QPD History for Type 6 AFFF, dated June 23, 2016 (available at http://www.dcfpnavymil.org/Systems/AFFF/MIL-F-24385%20QPL%20History%20for%20Type%206%20AFFF.pdf)

24    [21] *See* Dep't of Defense SD-6 at 1.

25    [22] *See, e.g.*, MIL-F-24385 §§ 3.16 & 4.7.16 (May 2, 1977).

26    [23] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1-6 (Nov. 4, 2002) (excerpt).

1    Engineering Service Center, and the U.S. Army Medical Research and Development

2    Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents

3    resulting from fire fighting exercises are considered to have adverse effects

4    environmentally."[24]   In June 1991, the Air Force stated that past Air Force fire training

5    activities resulted in "adverse environmental impact," including "soil contamination" and

6    the "potential" for "groundwater contamination."[25]   More recently, in a November 2017

7    report to Congress, the Department of Defense acknowledged the concerns raised by the

8    EPA regarding PFOS and PFOA in drinking water.  Nonetheless, it still described AFFF

9    containing PFOS or PFOA as a "mission critical product [that] saves lives and protects

10   assets by quickly extinguishing petroleum-based fires."[26]   Indeed, Naval Sea Systems

11   Command continues to require that MilSpec AFFF contain "fluorocarbon surfactants,"[27]

12   and expressly specifies (subject to recently imposed limits) use of "PFOS" and "PFOA" in

13   AFFF formulations.[28]   *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the

14   alleged risks of PFC-based AFFF products but continues to purchase them supports the

15   position that the government approved reasonably precise specifications for the claimed

16   defective design.").

17          50.    At minimum, this constitutes colorable evidence that Naval Sea Systems

18

19   _____

20   [24] *See* Membrane Treatment of Aqueous Film Forming Foam (AFFF) *Wastes for Recovery of Its Active Ingredients, at* 1 (October 1980), *available at*

21   http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

22   [25] USAF, Engineering Technical Letter: Site Selection Criteria for Fire Protection Training Areas, at 2 (June 14, 1991).

23   [26] Dep't of Defense, Aqueous Film Forming Foam Report to Congress, at 1-2

24   (Nov. 3, 2017), *available at* http://www.denix.osd.mil/derp/home/documents/aqueous-film-forming-foam-report-tocongress/.

25   [27] MIL-PRF-24385F(2) § 3.2 (2017).

26   [28] *Id.* § 6.6 & Tables 1, 3.

QB\510241.00070\55278797.3

1   Command "made a discretionary determination" regarding the formulation of MilSpec

2   AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re*

3   *Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011

4   WL 5109532, at *5 ("A defendant is not required to warn the government where 'the

5   government knew as much or more than the defendant contractor about the hazards of the

6   product.'") (citation omitted).   Where, as here, the government has exercised

7   "discretionary authority over areas of significant federal interest such as military

8   procurement," the government contractor defense applies. *In re Agent Orange Prod.*

9   *Liab. Litig.*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *13.

10      51.    The assertions made herein by and on behalf of Tyco are equally applicable

11   to and are restated by Chemguard.

12      WHEREFORE, Tyco and Chemguard hereby remove this action from the Superior

13   Court of the State of Arizona, Pima County, to this Court.

14      RESPECTFULLY SUBMITTED this 21st day of December, 2018.

15

16                                    By /s/ Jeremy A. Lite

17                                    Jeremy A. Lite
                                      Ryan S. Patterson
18                                    Kristen Arredondo
                                      Quarles & Brady, LLP
19                                    Renaissance One
                                      Two North Central Avenue
20                                    Phoenix, AZ  85004-2391

21                                    Liam J. Montgomery
                                      J. Liat Rome
22                                    WILLIAMS & CONNOLLY LLP
                                      725 Twelfth Street, N.W.
23                                    Washington, D.C.  20005
                                      (PHV applications forthcoming)
24
                                      *Attorneys for Defendants Chemguard, Inc. and*
25                                    *Tyco Fire Products L.P.*

26

QB\510241.00070\55278797.3

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2018, the foregoing document was filed electronically.   A Notice of Electronic Filing (NEF) will be sent by operation of the Court's Electronic Case Filing (ECF) system to the filing party, the assigned Judge and any registered user in the case as indicated on the NEF.   A copy of the foregoing document was also mailed this date to the following:

Kevin D. Neal
Kenneth N. Ralston
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225

Paul J. Napoli
Louise Caro
Tate J. Kunkle
Aaron Modiano
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
*Attorneys for Plaintiffs City of Tucson and Town of Marana*

Richard F. Bulger
Tyler Alfermann
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
*Attorneys for Defendant 3M Company*

Aaron T. Lloyd
GREENBERG TRAURIG LLP
2375 East Camelback Road, Suite 700
Phoenix, AZ  85016

Keith E. Smith
GREENBERG TRAURIG LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
*Attorneys for Defendant National Foam, Inc.*

QB\510241.00070\55278797.3

1   Michael L. Carpenter
    GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.
2   516 South New Hope Road
    Post Office Box 2636
3   Gastonia, NC 28053
    *Attorneys for Defendant Buckeye Fire Equipment Company*
4

5

6
    *s/ Maria Marotta*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-19-

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| City of Tucson and Town of Marana,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>3M Company, f/k/a Minnesota Mining and<br>Manufacturing Co.; Buckeye Fire<br>Equipment Company; Chemguard, Inc.;<br>Tyco Fire Products, L.P.; and National<br>Foam Inc.,<br><br>                    Defendants. | **DEFENDANT BUCKEYE FIRE<br>EQUIPMENT COMPANY'S<br>CONSENT TO REMOVAL** |

Defendant Buckeye Fire Equipment Company consents to the removal of the above-captioned action from the Superior Court of the State of Arizona, Pima County, to the United States District Court for the District of Arizona.

This 20th day of December, 2018.

/s/ Michael L. Carpenter
On behalf of Defendant,
Buckeye Fire Equipment Company

# EXHIBIT C

1    Aaron T. Lloyd
2    (AZ Bar #027987)
     Greenberg Traurig LLP
3    2375 East Camelback Road, Suite 700
     Phoenix, AZ  85016
4    602.445.8468
5    lloyda@gtlaw.com

6
                **IN THE UNITED STATES DISTRICT COURT**
7                    **DISTRICT OF ARIZONA**
8

9    City of Tucson and Town of Marana,          NO. _____

10                   Plaintiffs,                 (Formerly Pima County Superior Court
                                                 Case No. C20185523)
11        vs.

12   3M Company, f/k/a Minnesota Mining and
     Manufacturing Co.; Buckeye Fire
13   Equipment Company; Chemguard, Inc.;
     Tyco Fire Products, L.P.; and National
14   Foam Inc.,                                  **CONSENT OF NATIONAL FOAM,**
                                                 **INC. TO NOTICE OF REMOVAL**
15                   Defendants.

16

17

18        Defendant National Foam, Inc., a Delaware corporation with its principal place of

19   business and corporate headquarters in Angier, North Carolina, by and through its

20   undersigned counsel, and without waiving any defenses or claims (including, without

21   limitation, insufficient process and insufficient service of process), hereby consents to

22   removal of this action currently pending in the Pima County Superior Court Case No.

23   C20185523, to the United States District Court for the District of Arizona.

24

25

26

1       RESPECTFULLY SUBMITTED this 21st day of December, 2018.

2                       By: */s/ Aaron T. Lloyd*

3                        Aaron T. Lloyd
                          (AZ Bar #027987)

4                        Greenberg Traurig LLP
                         2375 East Camelback Road, Suite 700

5                        Phoenix, AZ  85016

6                        Tel: (602) 445-8468
                         lloyda@gtlaw.com

7

8                        Keith E. Smith (*Pro Hac Vice* to be filed)
                        Greenberg Traurig, LLP

9                        2700 Two Commerce Square

10                       2001 Market Street
                        Philadelphia, PA 19103

11                       Tel: (215) 988-7800
                        Fax: (215) 988-7801

12

13                        *Attorneys for Defendant,*
                        *National Foam, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT D

1  Richard F. Bulger
2  Tyler D. Alfermann
   **MAYER BROWN LLP**
3  71 South Wacker Drive
   Chicago, IL 60606
4  Telephone: 312-782-0600
   rbulger@mayerbrown.com
5  talfermann@mayerbrown.com

6
                    **IN THE UNITED STATES DISTRICT COURT**
7                           **DISTRICT OF ARIZONA**
8

9  City of Tucson and Town of Marana,          NO. _____

10          Plaintiffs,                         (Formerly Pima County Superior Court
                                                Case No. C20185523)
11     vs.

12  3M Company, f/k/a Minnesota Mining and      **CONSENT TO NOTICE OF**
    Manufacturing Co.; Buckeye Fire            **REMOVAL BY 3M COMPANY**
13  Equipment Company; Chemguard, Inc.;
    Tyco Fire Products, L.P.; and National
14  Foam Inc.,

15          Defendants.

16

17

18      Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company), by and

19  through its undersigned counsel, and without waiving any defenses or objections to which it may

20  be entitled, hereby consents to removal of this action currently pending in the Pima County

21  Superior Court, Case No. C20185523, to the United States District Court for the District of

22  Arizona.

23      3M Company is a Delaware corporation with its principal place of business in Minnesota.

24
25      RESPECTFULLY SUBMITTED this 21st day of December, 2018.

26

1

2

3          By */s/Richard F. Bulger*
           Richard F. Bulger (*Pro hac vice to be filed*)
4          Tyler D. Alfermann (*Pro hac vice to be filed*)
           **MAYER BROWN LLP**
5          71 South Wacker Drive
           Chicago, IL 60606
6          Telephone: 312-782-0600
           rbulger@mayerbrown.com
7          talfermann@mayerbrown.com

8
           *Attorneys for Defendant 3M Company*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26